

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0729-14

### GILBERT TAPIA, JR., Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRTEENTH COURT OF APPEALS
### BEE COUNTY

RICHARDSON, J., delivered the opinion of the Court, in which KELLER, P.J., and KEASLER, HERVEY, ALCALA, YEARY, and NEWELL, J.J., joined. JOHNSON, J., filed a concurring opinion. MEYERS, J., filed a dissenting opinion.

## O P I N I O N

On two separate occasions appellant was brought before the trial court on motions to revoke deferred adjudication community supervision and adjudicate guilt.[1] We granted discretionary review to determine whether the court of appeals properly held that due process prohibited the trial court from revoking appellant's probation after the second revocation

---

[1] The first hearing took place on March 27, 2012, and the second hearing took place on May 1, 2012.

hearing, based upon grounds that the trial court was aware of, but did not consider, at the first revocation hearing. Because we do not think appellant's due process rights were violated under the facts of this case, we reverse the court of appeals.

## I. OVERVIEW

After appellant's first revocation hearing, the trial court continued appellant on deferred adjudication community supervision but sanctioned him to 21 days in the county jail. At the second revocation hearing, based on a new motion filed by the State, the trial court revoked appellant's community supervision, adjudicated him guilty of aggravated assault, and sentenced appellant to five years in the Texas Department of Criminal Justice–Institutional Division ("TDCJ").[2]

---

[2] Throughout these proceedings the parties and the appellate court have used the terms "probation" and "community supervision" interchangeably. They have also referred to the revocation of appellant's deferred adjudication community supervision (or the revocation of probation) in conjunction with the adjudication of appellant's guilt. It is important to recognize that there is a fine distinction. Article 42.12, section 5(b) of the Texas Code of Criminal Procedure states that "[o]n violation of a condition of [deferred adjudication] community supervision," the defendant is entitled to a hearing, which is "limited to the determination by the court of whether it proceeds with an adjudication of guilt on the original charge." Although this particular portion of this section of the statute does not use the term "revocation," whether deferred adjudication community supervision is being revoked or not is actually what is being determined by the trial court. If the trial court adjudicates the defendant guilty, it then proceeds to impose a specific sentence and either probates that sentence or sends the defendant to TDCJ for the specified term of years. All this is usually done simultaneously. To be consistent in this opinion, we use the term "community supervision" or "probation" when referring to "deferred adjudication community supervision," and we use the term "motion to revoke" when referring to the two motions filed by the State that were seeking an adjudication of appellant's guilt. We also use the term "revocation proceeding" or "revocation hearing" when referring to each hearing held by the trial court to determine whether there should be an adjudication of guilt. A plea of true, standing alone, is sufficient to support the revocation of community supervision and adjudicate guilt. *See Moore v. State,* 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980). When, as in this case, a defendant enters a plea of true at an adjudication hearing, the proceeding becomes a unitary proceeding to determine the remaining issue of punishment.

The Thirteenth Court of Appeals reversed the trial court's judgment, believing that this Court's opinion in *Rogers v. State,* 640 S.W.2d 248 (Tex. Crim. App. 1981) (op. on State's first motion for reh'g), controlled. The court of appeals held that appellant's due process rights were violated when the trial court revoked appellant's community supervision at the second revocation hearing based upon drug and alcohol violations that had occurred and were known to the trial court at the time of the first revocation proceeding. *Tapia v. State,* No. 13-12-00334-CR, 2014 WL 1789207, at *7 (Tex. App.– Corpus Christi-Edinburg 2014) (mem. op., not designated for publication).

We granted the State's Petition For Discretionary Review on the following two issues: (1) "whether a revocation must be based on evidence of a violation that occurred or was discovered subsequent to the preceding continuation or modification," and (2) "if the State is required to allege all known violations or risk forfeiting them, whether that requirement is subject to waiver or estoppel."

We hold that the *dicta* set forth in *Rogers* that was strictly followed by the appellate court is not applicable here because the facts of this case are distinguishable. The trial court did not violate appellant's due process rights when it revoked his community supervision. First, the revocation of appellant's community supervision occurred after a second revocation proceeding and was based upon newly alleged drug and alcohol violations. Second, even though the trial judge, the State, and appellant were all aware of the purported drug and

---

*See Carroll v. State,* 975 S.W.2d 630, 631-32 (Tex. Crim. App. 1998).

alcohol violations at the first hearing, such violations were not alleged in the first written motion to revoke, and no evidence was presented at the first hearing in support of such violations. Despite appellant's argument to the contrary, we find that it was clear that the judge had intentionally not taken the drug and alcohol violations into consideration when she made the decision to continue appellant's community supervision after that first hearing.[3] We therefore reverse the decision of the Thirteenth Court of Appeals and reinstate the judgment of the trial court.

## II. BACKGROUND

On April 18, 2002, appellant pled guilty to the second degree felony offense of aggravated assault. The trial court placed appellant on deferred adjudication community supervision for ten years. At the same time, appellant was sentenced on a separate offense to ten years' imprisonment. The term of imprisonment and the ten years' community

---

[3] Although the trial judge had been advised by the State of additional drug and alcohol violations not alleged in the first motion to revoke that was before the court, given the timing of those violations, the defense objected to the State amending that motion. The trial judge properly sustained the objection and noted she would not consider those violations for the first hearing; however, she advised that the State could elect to file an additional motion to revoke at a later date. It is uncontroverted that the defense was aware of the drug and alcohol violations and objected to them being included in the first hearing. The trial court also sustained appellant's objection to the State's request for a continuance. In other words, appellant obtained precisely what he requested from the court. At the conclusion of the first hearing, the trial judge sanctioned appellant to 21 days in jail as a condition of his continued probation. While serving the 21 days, the State filed a second motion to revoke based upon the drug and alcohol violations that were not alleged in the first motion to revoke. At the second hearing, based on that second motion to revoke, appellant pled "true" to the drug and alcohol violations.

supervision were to run concurrently.[4]  On December 11, 2011, appellant discharged his

sentence on the other offense and was released from TDCJ, but he was still on deferred

adjudication community supervision for this aggravated assault until April 18, 2012.

According to appellant, however, when he was discharged from prison he was not contacted

by the probation department, nor did he contact the probation department.[5]

On March 6, 2012, the State filed its first motion to revoke community supervision

and adjudicate guilt.  This motion was based upon three alleged violations: (1) failure to

inform the probation officer of his change of address when he was released from prison; (2)

failure to report to his probation officer; and (3) violation of curfew.  According to a

"Revocation Report" (the pre-sentence investigation, or "PSI," report) prepared on March

23, 2012, appellant was arrested and placed in jail on this motion to revoke on or about

March 9, 2012.  According to that report, when he was interviewed in jail by the probation

officer, appellant admitted to having used cocaine and alcohol on or about March 8, 2012.

There is no evidence that the State prosecutor was made aware of appellant's admission to

having used drugs and alcohol before the March 23rd report was prepared.  The State did not

amend its first motion to revoke to include those drug and alcohol violations before the

---

[4] Although this appears to be an unusual sentence, the trial court explained the rationale at the time of the revocation.

[5] At both revocation proceedings, appellant presented, as his defense to the alleged violations, that he was unaware that he was still on probation after being released from his ten-year prison sentence.  The merits of his defense and the sufficiency of the evidence supporting the trial court's adjudication are issues that are not before this Court.

March 27th hearing, but before that hearing began the State requested leave to amend the motion to revoke to include the drug and alcohol violations.[6] The State also requested that the hearing be continued. Appellant objected to the State amending the motion to revoke and to continuing the hearing. The court denied the State's requests. There is nothing in the record from that first hearing reflecting that the trial court judge reviewed the March 23rd PSI at any time during that first hearing.[7] It was not offered into evidence nor referenced.

## A.    The First Revocation Proceeding

As noted above, on March 27, 2012, the trial court held a hearing on the State's first motion to revoke and adjudicate. The following exchange took place between the trial court, the assistant district attorney ("ADA"), appellant's counsel at the revocation proceeding ("Counsel"), and appellant's probation officer:

> ADA:            Your Honor, we're in the process of preparing an amended MTR.
>
> The Court:      Talk to [defense counsel]. She may not be wanting to wait. If she is ready to go, you have got to go.
>
> *  *  *
>
> Counsel:        Your Honor, we're ready to go forward today. We would be opposed to a continuance. My client is set to expire off of his probation on April 18[th], 2012.

---

[6] March 23, 2012, fell on a Friday. The first hearing was on the following Tuesday, March 27, 2012.

[7] In fact, Article 42.12, section 9(c), states that "[t]he judge may not inspect a report and the contents of the report may not be disclosed to any person" unless disclosure is permitted by certain statutory exceptions. No such exceptions were applicable here.

The Court: Okay. Well, they informed me they are going to file a motion to amend, so it will be filed in a motion to revoke, so you'll have another hearing before that date. If that is what you want to do. I think it's sort of a moot issue because it will delay, but there is no problem with that if that is how you want to proceed. I just want to make sure you and your client understand that. Because if they file the new motion he will still be in custody on the new motion and that is the way you want to proceed with today, correct? It doesn't bother me. I don't care. I understand not being prepared for the new stuff. There is no problem with that.

Counsel: We'll go forward today.

The Court: Does the State want to file the motion to amend or file a motion for continuance? I guess that's the other option.

ADA: Yes, your Honor. That is what the State wants to do is file a motion to amend and then a motion to continue.

The Court: Okay. What is the new allegation in the motion to revoke?

Probation officer: The new allegations?

The Court: Yes.

Probation officer: Will be alcohol and drug use, Judge.

The Court: Okay.

* * *

The Court: Okay. That is not very judicially economical, but we'll go ahead and proceed. File it the day before we get to court and we'll take care of it.

All right.

* * *

The Court: Hang on real quick before we get going. Mr. Tapia, I just need you to understand today before we proceed that if I do find you're the same person that was placed on probation and you

have violated your terms and conditions of community supervision, you could be found guilty and sentenced up to 20 years in the Institutional Division of the Texas Department of Criminal Justice and reassessed any unpaid costs and fines. That is the most that could happen to you. Do you understand that ?

Appellant:            Yes, ma'am.

The probation officer testified about the alleged violations of failing to report and failing to provide change of address. The State continued its questioning:

ADA:            Are there any other conditions which your records reflect the defendant has violated at this time that have been provided to the defense?

Probation officer:      No.

ADA:            Now, are there other violations which your department is currently aware of?

Probation officer:      Yes.

Counsel:          Objection, your Honor, relevance; does not go to the allegations being alleged.

The Court:        You may proceed. Overruled.

ADA:            Does your department intend to file another MTR based on those violations?

Probation officer:      Yes.

ADA:            And is the department's intent to file that prior to the defendant's probation terminating?

Probation officer:      Yes.

ADA:            I'll pass the witness, your Honor.

At the conclusion of this first revocation hearing, the trial judge stated that she was "going to find that [appellant has] violated terms and conditions of paragraphs one [failure to report] and two [failure to provide change of address], not true to paragraph three [curfew violation]." The judge continued appellant on deferred adjudication community supervision and ordered him to serve twenty-one days in jail as a condition of his continued community supervision.

## B.     The Second Revocation Proceeding

Three days after the first hearing, on March 30, 2012, the State filed a second motion to revoke (and adjudicate), alleging that appellant violated his community supervision by using drugs and alcohol on March 8, 2012. The court held a hearing on the second motion to revoke on May 1, 2012. At the start of that hearing, appellant's counsel stated that appellant would enter a plea of "true" to the alleged violations, and appellant stated under oath that he was admitting that the alleged violations were true and correct. The court found that appellant had violated his probation and proceeded on to "the disposition and the punishment phase" of the hearing:

The Court:         All right. Then, Mr. Tapia, I'm going to make a finding you have violated your probation, just like you told me you did. And now we'll proceed on the disposition and the punishment phase. Is the State ready?

ADA:             State's ready, Your Honor.

The Court: Is defense ready?

Counsel: We're ready.

The Court: Okay. State have any evidence?

ADA: Yes, Your Honor. The State offers State's Exhibit A, the revocation report in this case.[8]

Counsel: No objection.

The Court: It will be received. And what's the State's recommendation today?

ADA: Revocation and confinement in the Texas Department of Criminal Justice Institutional Division.

Counsel: I would like to call my client, Your Honor.

The Court: Okay. Raise your right hand, please, sir.

(The witness was sworn in)

The Court: All right. Thank you.

Counsel: Mr. Tapia, we were here last March 27; do you recall that?

Appellant: Yes, ma'am.

The Court: I do.

Counsel: And you explained to the Court on that date that you didn't realize that you were on probation?

Appellant: Yes, ma'am.

---

[8] Although the State refers to the revocation report as "Exhibit A," it is marked as "Exhibit 2" in the clerk's record of the May 1, 2012 revocation hearing.

Counsel: And on that day, the Court considered the evidence in this case and decided to give you a jail sanction. Have you finished that jail sanction?

Appellant: Yes, ma'am.

Counsel: And when did your probation expire?

Appellant: April 18th of this year.

Counsel: So you're done with probation?

Appellant: Yes, ma'am.

Counsel: You're just waiting for the Court to hear this case and decide what she wants to do with it?

Appellant: Yes, ma'am.

\* \* \*

The Court: What's the State's request?

\* \* \*

ADA: State would request, Your Honor, six years confinement.

The Court: [to defense counsel] And you're requesting just to be – walk away?

Counsel: Your Honor, if he served ten years confinement and the cases were set – it looks like if you look at the criminal history and take judicial notice of the files, he was supposed to be considered for shock probation and that never happened on this case. He had three months left of probation. He didn't realize he was still supposed to be on probation. The Court considered all of that evidence back in March when you ordered a jail sanction. This evidence is nothing new, what he's pled to is nothing new to –

The Court:        It is new, [Counsel]. It is new. He would not plea to it at the time. So we proceeded on the – on the subsequent MTR.

Counsel:        Your honor, I believe that it was in the PSI, the admission was in the PSI at the last hearing.

The Court:        It's not – it's not a violation, though.

Counsel:        But it's considered in disposition and the court did have that evidence before , when it considered –

The Court:        He may have believed it is so, but the court did not consider that. Intentionally.

Counsel:        It was before the court at the time, your honor, and we're asking you to consider that and to allow his probation to expire.

The Court:        Okay. Well, it will not be granted. I'm going to revoke your probation and sentence you to five years in the ID, reassess costs, fine and restitution.

## C.     <u>The Decision By The Thirteenth Court of Appeals</u>

Appellant appealed the revocation of his community supervision and adjudication of guilt to the Thirteenth Court of Appeals, arguing that the trial court violated his due process and due course of law rights by revoking his community supervision based on violations of conditions of community supervision that had occurred before the trial court continued his community supervision at the first revocation proceeding. The appellate court agreed with appellant and reversed the trial court's order revoking community supervision. *Tapia,* 2014 WL 1789207 at *7.

On appeal to the Thirteenth Court of Appeals, the State first argued that appellant had waived his due process arguments on appeal because appellant's trial attorney failed to make a proper objection. The appellate court held that appellant's attorney had properly objected:[9]

> To preserve a complaint for appellate review, a party, at trial, must present and obtain a ruling on the complaint that states "the grounds for the ruling that [it] sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." Tex. R. App. P. 33.1(a) .... "A party need not spout 'magic words' or recite a specific statute to preserve an issue as long as the basis of his complaint is evident to the trial court." *Bryant v. State,* 391 S.W.3d 86, 92 (Tex. Crim. App. 2012).
>
> . . . Defense counsel's argument that the allegation was considered at the previous revocation hearing was sufficiently specific to make the trial court aware of appellant's complaint . . . . Accordingly, we hold that appellant preserved his first issue for appeal. We therefore will proceed to the merits of appellant's due process argument on his first issue.

*Tapia,* 2014 WL 1789207 at *6-7.

The "waiver" issue raised before the appellate court challenged whether appellant preserved error for appeal, not whether appellant's alleged waiver impacted the merits of his due process complaint.[10] Although not clearly articulated, the appellate court obviously

---

[9] Neither of the State's grounds for petitionary review directly raises the error preservation issue decided by the court of appeals. Although error preservation is a systemic requirement that we may address on our own motion if warranted by the circumstances, *Payne v. State,* 2013 WL 765578 (Tex. Crim. App. 2013) and *Haley v. State,* 173 S.W.3d 510, 515 (Tex. Crim. App. 2005), we will not address that issue since it was not raised and in light of the appellate court's finding that appellant preserved his complaint for appellate review. *See Payne v. State,* 2013 WL 765578 (Tex. Crim. App. 2013).

[10] The appellate court briefly addressed the "waiver" issue in a footnote, stating that defense counsel's wish to go forward "did not excuse the violation of appellant's due process rights." *Tapia* at *6, n.5. The court noted that appellant did not "consent to the filing of a new motion to revoke

believed that appellant's "objection" at the conclusion of the second hearing was timely as well as specific.[11]

In addressing the merits of the due process argument, the court of appeals relied upon this Court's opinion in *Rogers v. State,* 640 S.W.2d 248 (Tex. Crim. App. 1982) (op. on State's first motion for reh'g). The appellate court held that the trial court violated appellant's due process rights because it revoked his community supervision for a violation that occurred and was known to the court before appellant was continued on community supervision. The appellate court noted that, when the trial court denied the State's motion to amend and motion for continuance, the State had the option of moving to dismiss the motion to revoke and refiling it with the newly alleged violations. It explained, "[h]ad the State followed this procedure, appellant's due process rights would not have been violated." *Tapia,* 2014 WL 1789207 at *6.

The State also urged that appellant had "invited error" by objecting to a continuance. In a footnote, the appellate court dismissed the "invited error" argument, stating that "trial counsel's statement that appellant wished to 'go forward today' did not invite error as she only indicated that she was opposed to a continuance and did not explicitly state, nor did she

---

based on the drug use allegation." *Id.*

[11] *See, e.g., Lovill v. State,* 319 S.W.3d 687, 691 (Tex. Crim. App. 2009) ("To preserve a complaint for appellate review, the record must show that a specific and timely complaint was made to the trial judge and that the trial judge ruled on the complaint. The specificity requirement is met if the complaint made at trial was clear enough to the trial judge so as to permit the trial judge to take corrective action when the complaint was made . . . . A party's complaint is regarded as timely when it was made as soon as the ground for complaint is apparent or should be apparent.").

imply, that she consented to the filing of a new motion to revoke based on the drug use allegation." *Id.* at *6, n.5.

The appellate court also rejected the argument that the trial judge had the option of "intentionally" choosing not to consider the drug and alcohol violations in the first revocation proceeding, noting as follows: "The *Rogers* court disapproved of what it called a 'hear-no-evil' approach, determining that a trial court may not continue a defendant on probation at a hearing, then hold a subsequent hearing, state it intentionally chose not to adjudicate the violations at the first hearing, and revoke probation without evidence of a subsequent violation. The trial court therefore could not retain its ability to revoke based on the prior allegations by willfully avoiding ruling on them at the first hearing." *Id.* at 6 (citing to *Rogers,* 640 S.W.2d at 254).

The appellate court acknowledged that "the *Rogers* court did not address the same set of facts presented here."[12] Regardless, the court of appeals held that the trial court violated appellant's due process rights "because it revoked probation for a violation that occurred before appellant was continued on probation in the absence of any newly discovered evidence of that violation, as is specifically proscribed by *Rogers*." *Id.* The court of appeals concluded that "the procedure employed by the State and the trial court did not adequately

---

[12] *Tapia,* 2014 WL 1789207 at *6 ("In *Rogers,* the trial court revoked probation at the second hearing for the same allegations the defendant pleaded true to at the first hearing, whereas here, the drug use allegation was never formally included in the original motion to revoke because the trial court denied the State's request to amend it at the first hearing.").

protect appellant's due process rights, and was therefore not permitted according to the *Rogers* court's explicit reasoning that due process requires a determination that [the defendant] breached the conditions *after* he was returned to probation (or that there is newly discovered evidence of a previous violation which was not known at the time of the hearing)."[13] *Id. at* *7 (emphasis in original).

## III.  ANALYSIS

Because the Court of Appeals based its holding on our decision in *Rogers  v. State,* we will begin our analysis with a detailed summary of the three *Rogers* opinions.

### A.     The *Rogers* "Trilogy"

#### 1.     The Underlying Facts in *Rogers*

On May 14, 1980, the State filed a motion to revoke Rogers' probation that alleged six different violations, to which he pled "true." At the conclusion of the hearing the court told Rogers that it was going to "reinstate" his probation and "continue this hearing to a specific date" sixty days away, at which time the court was going to "determine whether or not [Rogers was] serious about this thing." *Id*.  The judge then told Rogers that it was giving

---

[13] In its opinion, the appellate court points out that the trial court had the benefit of the PSI report during the first hearing on the State's motion to revoke. *Tapia,* 2014 WL 1789207 at *6 ("[The State] made the trial court aware of [the drug and alcohol use] through . . . the PSI that stated that appellant had admitted to drug and alcohol use.").  The PSI report notes that appellant admitted to using cocaine and alcohol on March 8, 2012; however, the first hearing's transcript does not reference the PSI report or the appellant's purported admission.  It was only at the second hearing, after appellant pled "true" to the alleged drug and alcohol violations, when the State presented the PSI report to the trial court.

him "sixty days just to straighten up, and if [he didn't, he was] finished." *Id*. Rogers replied to the court stating: "Yes sir, That's fair enough, sir." *Id*. After ninety days, the court reconvened the hearing on September 26, 1980, announcing that "this is a continuation of a hearing that was had on June 26, 1980." *Id*. The court then "summarily revoked appellant's probation on the basis of the six violations appellant previously stipulated to as being 'true'." *Id*. There were no additional violations alleged, and the record was silent as to what happened in the ninety-day interim.

Rogers appealed his revocation, arguing that the trial judge denied him his right to due process and fundamental fairness in that having once exercised his discretion to continue appellant on probation at the conclusion of the hearing on June 26, 1980, he was without authority to revoke appellant's probation on September 26, 1980, in the absence of any new allegations or proof of any subsequent violations. The State responded that the trial judge merely continued the hearing, and therefore did not exercise his authority to continue, modify, or revoke appellant's probation.

### 2. The June 17, 1981 Panel Opinion ("*Rogers I*")

Faced with the dilemma of deciding whether the trial judge continued appellant's probation and modified it accordingly, or whether he took his decision under advisement pending the outcome of subsequent conduct by appellant, this Court decided that, "by his actions and oral instructions modifying the conditions of probation, the trial judge exercised his discretion and continued appellant's probation." *Rogers v. State,* 640 S.W.2d 248, 251

(Tex. Crim. App. [Panel op.] 1981). Therefore, "having done so, he was without authority to revoke appellant's probation on September 26, 1980 in the absence of allegations and proof of any subsequent violations." *Id*. This Court therefore held that appellant was denied his right to due process of law, and the order revoking his probation was set aside. *Id*. In a footnote, this Court urged trial judges "to clarify their actions so this type of situation is eliminated in the future." *Id.* at 251, n. 4.

### 3. The March 3, 1982 Opinion On State's First Motion For Rehearing ("*Rogers II*")

In the opinion overruling the State's First Motion For Rehearing, this Court elaborated on its due process analysis. This Court recognized that, although the panel "strove dutifully, as panels must, to follow the precedents of the *en banc* court by deciding 'whether the trial judge continued appellant's probation, or continued the hearing,'" on rehearing it must turn "away from this question." *Rogers,* 640 S.W.2d at 251. On rehearing, this Court decided that "the distinction between 'continuing the probation' and 'continuing the hearing' is irrelevant to the question of what process is due when the trial court finally takes away the probationer's liberty." *Id.* It was the Court's opinion on the State's First Motion for Rehearing in *Rogers II* that formed the true basis of the Court of Appeals' holding in this case.

In *Rogers II,* this Court recognized that "the liberty of a probationer is protected by the due process and due course of law provisions of the constitutions." *Id.* (citing to *Gagnon v. Scarpelli,* 411 U.S. 778 (1973) and *Wester v. State,* 542 S.W.2d 403 (Tex. Crim. App.

1976)). "This protection includes the fundamental requirement that probation, recently returned, not be taken away arbitrarily. There must be a determination that the probationer has in fact breached the conditions of probation." *Id.* at 252 (citing to *Morrissey v. Brewer,* 408 U.S. 471, 483-484(1972); *Wester v. State,* 542 S.W.2d 403, 405-406 (Tex. Crim. App. 1976)).

> *Rogers II* held that, when the probationer is returned to probation for three months,

> there must be a determination that he breached the conditions *after* he was returned to probation (or that there is newly discovered evidence of a previous violation which was not known at the time of the hearing). It would be the epitome of arbitrariness for a court first to conduct a hearing on alleged violations and exercise its discretion to return the probationer to probation (whether by a 'continuance of the hearing' or by a 'continuance of the probation'), and then decide several months later to exercise its discretion in the opposite fashion by revoking the probation without any determination of a new violation.

*Id.* (emphasis in original).

The *Rogers II* opinion clearly condemned a trial court for taking away a probationer's liberty after his or her probation had been continued "without a *proper* determination of a new violation of the conditions of probation." *Id.* at 255 (emphasis added). In overruling the State's original Motion for Rehearing, this Court's decision in *Rogers I* remained intact.

4. **The October 20, 1982, Opinion On State's Second Motion For Rehearing ("*Rogers III*")**

The Court then did an about-face in *Rogers III,* holding that, since he failed to voice any due process objections to the procedures used by the trial court, "either at the time the judge continue[d] the hearing and/or probation, or at the time of actual revocation or at the time of sentencing," appellant waived his complaint. *Rogers v. State,* 640 S.W.2d 248, 263-

64 (Tex. Crim. App. 1982) (op. on State's second motion for reh'g). This Court granted the State's second Motion for Rehearing and affirmed the order revoking appellant's probation.

Although it is *dicta,* the *Rogers III* opinion carried forward from *Rogers I* and *Rogers II* the following rule of law:

> Like the majority on the State's original motion for rehearing, we agree that the distinction between "continuing the probation" and "continuing the hearing" is irrelevant to the question of what process is due when the trial court finally takes away the probationer's liberty. Further, we agree with the majority on original rehearing that due process mandates another determination that the probationer has breached the conditions of probation *after* he has been returned to probation (or that there is newly discovered evidence of a previous violation which was not known at the time of the first revocation hearing). And this new determination must occur at another revocation hearing for which the probationer has been served with a new motion to revoke giving him proper notice as required by due process.

*Id.* at 263 (emphasis in original).

In this case, the Thirteenth Court of Appeals followed this "rule" of *Rogers* to the letter, finding that because the drug and alcohol violations were *known* to the trial court when it continued appellant's probation at the first hearing, the trial court violated appellant's due process rights when it revoked appellant's probation at the second hearing in the absence of allegations of a subsequent violation or newly discovered evidence of a prior violation. *Tapia* at *7.

**B.** **The Arguments Presented By The Parties**

The State argues that the Court's pronouncement in *Rogers III* quoted above is *dicta*, is of no precedential value, and that it would not be good policy to apply it here. Further, the State asserts that it does not have to abide by a "use it or lose it" approach to motions to

revoke probation. In other words, it did not forfeit the right to raise the drug and alcohol violations in a second motion to revoke simply because it knew about them at the time of the first revocation hearing.

Appellant agrees that the above-quoted statement from *Rogers III* is *dicta,* but argues in favor of strict adherence to this "rule," claiming that revocation on the drug and alcohol violations was barred by statutory, contract, and due process law.

The facts of this case are notably different from those in *Rogers*. Therefore, we decline to strictly apply the *dicta* from *Rogers II* (and restated in *Rogers III*) to the specific facts of this case.

## C.       Was Appellant Afforded Due Process?

The central issue to be determined in reviewing a trial court's exercise of discretion in a community supervision revocation case is whether the defendant was afforded due process of law. *Leonard v. State,* 385 S.W.3d 570, 577 (Tex. Crim. App. 2012); *see also Euler v. State,* 218 S.W.3d 88, 91 (Tex. Crim. App. 2007) ("In particular, where, as in Texas, the fact finder, if it finds a violation of the conditions of probation, has discretion to continue the probation, the probationer 'is entitled [by due process] to an opportunity to show not only that he did not violate the conditions [of his probation], but also that there was a justifiable excuse for any violation or that revocation is not the appropriate disposition.'") (citing to *Black v. Romano,* 471 U.S. 606, 612 (1985)).[14]

---

[14] A trial court abuses its discretion when the decision lies outside the zone of reasonable disagreement. *Apolinar v. State,* 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). The determination of an adjudication of guilt is reviewable in the same manner as that used to determine whether sufficient

In *Gagnon v. Scarpelli*, the Supreme Court enunciated the minimum requirements of due process which must be observed in community supervision revocation hearings: (1) written notice of the claimed violations of probation; (2) disclosure to the probationer of the evidence against him; (3) opportunity to be heard in person and to present witnesses and evidence, and the right to confront and cross-examine adverse witnesses; (4) a neutral and detached hearing body; and (5) a written statement by the fact finders as to the evidence relied on and the reasons for revoking probation. *Gagnon v. Scarpelli,* 411 U.S. 778, 786 (1973) *(*citing *Morrissey v. Brewer,* 408 U.S. 471, 489 (1972)). In Texas, the procedure for revoking probation affords a probationer greater safeguards than those required by *Gagnon* and *Morrissey. See Ruedas v. State,* 586 S.W.2d 520, 523 (Tex. Crim. App. 1979) (citing to *Whisenant v. State,* 557 S.W.2d 102 (Tex. Crim. App. 1977)).

We see no reason to add a seventh requirement that revocation *must always* be based on evidence of a violation that occurred or was discovered subsequent to an earlier hearing where probation was continued, particularly under the facts of this case where appellant not only acquiesced in how the two revocation hearings proceeded before the trial court, but objected to the inclusion of the drug and alcohol violations for the court's consideration at that

---

evidence supported the trial court's decision to revoke community supervision. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 5(b). While a plea of true, standing alone, is sufficient to support the revocation of community supervision and adjudicate guilt, *Moore v. State,* 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980), this case involves the issue of whether the trial court afforded appellant due process by revoking his community supervision at a second revocation hearing on violations that were known at the time of the first revocation hearing.

revocation hearing.[15]    As discussed below, we find that, under the facts of this case,

appellant's due process rights were adequately protected.[16]

### 1.    Written Notice of the Claimed Violations of Probation

The record from the first revocation proceeding reflects that appellant had written

notice of the State's allegations that appellant had failed to report to his probation officer, that

---

[15] The State argues that since appellant insisted on going forward with the first revocation proceeding with full awareness that a second motion to revoke based on the purported drug and alcohol violations was likely to be filed, he acquiesced in how the two proceedings unfolded, and he is therefore estopped from complaining (and/or has waived the right to complain) after the fact. "[E]stoppel is a flexible doctrine that manifests itself in various forms that are not limited to unilateral requests." *See Rhodes v. State,* 240 S.W.3d 882, 891 (Tex. Crim. App. 2007). Estoppel precludes a party from complaining of an error that he created by his actions. *See Druery v. State,* 225 S.W.3d 491 (Tex. Crim. App. 2007) (holding that advising a trial judge that he did not desire a lesser-included offense instruction estopped appellant from complaining that the jury charge did not include such an instruction); *Woodall v. State,* 336 S.W.3d 634, 646 (Tex. Crim. App. 2011) (holding that appellant was estopped from bringing a Confrontation Clause claim on appeal when he declined the court's invitation to bring the witness into court). In this case, appellant's actions, in large part, created the need for two separate revocation hearings. Moreover, his positions taken at the hearings were inconsistent. He insisted that the drug and alcohol violations *not* be considered at the first hearing, yet at the second hearing he insisted that the court must have already considered such violations in continuing his probation, since she knew about them at that first hearing. Moreover, in this case, appellant pled "true" to such violations at the second hearing, which gave the trial court very little room to ignore them. Nevertheless, while there are aspects of estoppel here, we are hesitant to apply it in this case, since estoppel is not a perfect fit under these facts. Appellant's actions and inconsistent positions, as discussed herein, factor into the decision that he was not deprived of due process in the first place. They do not clearly dictate that he is estopped from complaining that a due process error occurred.

[16] The dissent advocates for a "bright-line rule" and eschews "carving out complicated exceptions." However, as in other types of cases, this Court finds that a case-by-case analysis is warranted here, as opposed to a bright-line rule. *See, e.g., State v. Thomas,* 428 S.W.3d 99, 105 (Tex. Crim. App. 2014) (holding that there are no bright-line rules concerning appellate review of a trial court's discretion to grant a new trial); *Wade v. State,* 422 S.W.3d 661, 667 (Tex. Crim. App. 2013) ("No bright-line rule governs when a consensual encounter becomes a detention."); *Abney v. State,* 394 S.W.3d 542, 550 (Tex. Crim. App. 2013) (finding that there is no bright-line rule in deciding motions to suppress involving reasonable suspicion to stop); *Del Carmen Hernandez v. State,* 273 S.W.3d 685, 688 (Tex. Crim. App. 2008) (noting that *Crawford* did not provide a bright-line rule for what is to be considered testimonial); *Herrera v. State,* 241 S.W.3d 520, 531 (Tex. Crim. App. 2007) (declining to adopt a bright-line rule that *Miranda* warnings must precede all inmate interrogations).

he had failed to provide a change of address when he was released from prison, and that he had violated his curfew. The record from the second revocation proceeding reflects that appellant had written notice of the State's allegations that he had committed drug and alcohol violations.

Although the State sought to amend the motion to revoke at the first revocation proceeding to include these drug and alcohol violations, appellant objected to the amendment and objected to a continuance of the hearing. In response, the trial judge made it clear on the record that the State would have to file another motion to revoke if it wished to pursue revocation based on the drug and alcohol violations. There would then have to be a second revocation hearing wherein the judge would address such alleged violations. The trial judge even commented on the judicial inefficiency of proceeding in such a piecemeal fashion; however, she deferred to the appellant's preference to go forward. At the first revocation proceeding the State presented evidence on only the written allegations of failure to report, failure to provide change of address, and curfew violation. Therefore, appellant had written notice of the claimed violations of community supervision that were considered at the first revocation proceeding, and he had written notice of the claimed violations of community supervision that were considered at the second revocation proceeding.

As noted herein, it was clear from the first hearing's record that the State intended to file another motion to revoke before appellant's deferred adjudication community supervision expired, and that appellant would be called to a second revocation hearing on the alleged drug and alcohol violations.

**2.      Disclosure to the Probationer of the Evidence Against Him**

At the first revocation proceeding, the State presented evidence of the alleged violations of failure to report and failure to provide a change of address. Although the court allowed the State to ask appellant's probation officer whether there were other violations of which he was aware,[17] no evidence was presented to support such violations at the first revocation proceeding. The State also attempted to present evidence of the third alleged violation, a curfew violation; however, the State's witness was uncooperative, and the trial court ultimately found the curfew violation to be "not true."

At the second revocation proceeding appellant pled "true" to the alleged drug and alcohol violations, thus it was not necessary for the State to present additional evidence.

**3.      Opportunity to be Heard in Person and to Present Witnesses and Evidence, and The Right to Confront and Cross-Examine Adverse Witnesses**

Appellant was given the opportunity at both hearings to testify and present his defense that he was unaware that he was still on probation when he was released from TDCJ. Furthermore, at the first revocation proceeding appellant had the right to confront and cross-examine the State's witnesses. There were no witnesses at the second revocation proceeding since the appellant pled "true" to the alleged violations.

---

[17] Appellant's counsel objected on relevance grounds to the State's question about the additional violations. Although the court overruled this objection, the State did not present evidence of what such additional violations were, and through such testimony clarified that such violations would be considered at a second revocation proceeding. Thus, the relevancy objection, and overruling thereof, were of no real consequence.

**4.** **A Neutral and Detached Hearing Body**

There is nothing before us to indicate that the proceedings did not take place before a neutral and detached hearing body, and neither side makes that argument. Absent a clear showing of bias, we presume a trial court is neutral and detached. *Brumit v. State,* 206 S.W.3d 639, 645 (Tex. Crim. App. 2006); *Thompson v. State*, 641 S.W.2d 920, 921 (Tex. Crim. App. 1982).

**5.** **A Written Statement By the Fact Finder as to the Evidence Relied on and the Reasons for Revoking Probation**

The trial judge clearly articulated her rulings on the record after both hearings. After the first revocation proceeding, she stated that she was "going to find that [appellant has] violated terms and conditions of paragraphs one (failure to report) and two (failure to provide change of address), not true to paragraph three (curfew violation)." There was no mention by the trial court of any additional violations, and the only modified condition of community supervision was that appellant had to spend the next twenty-one days in the county jail. There was no indication that the modification was tied to any violations other than the ones alleged in the State's first motion to revoke, and there was no mention by the court that the time spent in jail would absolve appellant of any further punishment arising out of any future revocation proceedings. This Court finds that the trial judge sufficiently "clarif[ied her] actions" as admonished in *Rogers I.* 640 S.W.2d at 251, n. 4 ("We would urge trial judges to clarify their actions so this type of situation is eliminated in the future.").

At the beginning of the second revocation proceeding, the trial judge explained to

appellant that his community supervision could be revoked based on his plea of "true" to the newly alleged drug and alcohol violations. At the conclusion of the second revocation proceeding, the trial judge pronounced that she was revoking appellant's community supervision based on the drug and alcohol violations alleged in the second motion to revoke to which he had pled "true." The trial judge explained that she had "intentionally" not considered the alleged drug and alcohol violations when she continued the appellant on probation after the first revocation proceeding.

Unlike *Wright v. State,* 640 S.W.2d 265, 266 (Tex. Crim. App. [Panel Op.] 1982), the factual setting here *is* unique.[18] This is not a case where "the trial court holds a hearing on the motion to revoke, finds that the probationer has violated a condition of probation, but does not immediately render a decision, purporting to take the matter under advisement, and subsequently orders revocation of probation—ostensibly on the initial finding, though the record reflects intervening developments that were not ventilated by motion and hearing." *Wright,* 640 S.W.2d at 266.

In this case, the trial court held a hearing on the first motion to revoke, found that appellant had violated two out of the three alleged conditions of his community supervision, and made the decision to continue him on community supervision, all the while advising him that the State had the authority to file another motion to revoke on other known violations that

---

[18] *Wright v. State* is another panel opinion on revocation that has similar facts to the *Rogers* trilogy. The panel opinion in *Wright* was also reversed after a State's motion for rehearing, and this Court based its reasoning on *Rogers III*, which was published the same day. *Wright v. State,* 640 S.W.2d 265, 270 (Tex. Crim. App. 1982) (op. on State's motion for reh'g).

could result in the revocation of his community supervision. Within three days after that first hearing, the State filed another motion to revoke listing the drug and alcohol violations that were not considered at the first revocation hearing, and appellant was afforded a second revocation hearing during which he was given the opportunity to respond to the newly alleged violations.

Appellant urges (and the Court of Appeals held) that the *Rogers II* opinion expressly precludes a trial judge from ignoring known violations of community supervision when continuing a person on probation, only to revoke that person based upon such ignored violations at a later hearing. However, the appellate court's reliance on the "hear no evil" analysis in *Rogers II* was misplaced. In the "hear no evil" discussion in *Rogers II*, this Court condemned the trial court for "continuing" a probationer's revocation hearing and then subsequently revoking their probation, purportedly based on the violations alleged and proven at the earlier revocation hearing (yet knowing of subsequent violations), without holding a second hearing. This Court disparaged the belated revocation without an additional hearing that was purportedly justified by the trial court's assurance that the revocation was based only on violations proven at the earlier original hearing (that had for some reason been suspended), and not on any subsequent conduct that may have occurred after the probationer was returned to probation. "No matter how spotless the record, it always has been hard to believe that the trial judge really heard no evil—that he just decided, for no apparent reason, to finish the revocation proceeding that he had interrupted a few months previously. The 'hear-no-evil' argument, like the other justification, is not sufficient to excuse the denial of another hearing."

*Rogers,* 640 S.W.2d at 254-55. We therefore disagree with the appellate court's conclusion that this "hear no evil" analysis in *Rogers II* precludes what the trial court did in this case.[19]

Moreover, if a judge can give a curative instruction to a jury to disregard evidence, and the jury will be presumed to have followed such instruction,[20] then certainly the trial court judge here is allowed the same presumption–that she could intentionally ignore certain evidence in making her decision to return appellant to probation, and consider it if raised in a subsequent motion to revoke.

It is clear from the transcripts of both revocation hearings that the trial judge based her decision to revoke after the second revocation hearing on evidence of violations that, although known at the time of the first hearing, were intentionally not considered by her when she continued and modified appellant's probation at the first hearing. It is true that the trial court had the option at the first revocation hearing to find good cause to grant the State's motion to amend the first motion to revoke or to grant the continuance, and to handle all of the

---

[19] For the same reason, this case is also distinguishable from *Matheson v. State.* 719 S.W.2d 204, 205 (Tex. Crim. App. 1986) (holding that an objection that the State has shown no subsequent probation violations and that the court has revoked probation without a hearing is sufficient to implicate a denial of due process.).

[20] *Gardner v. State,* 730 S.W.2d 675, 696 (Tex. Crim. App. 1987), *cert. denied*, 484 U.S. 905 (1987); *Kemp v. State,* 846 S.W.2d 289, 308 (Tex. Crim. App. 1992), *cert. denied*, 508 U.S. 918 (1993); *Ovalle v. State,* 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) ("Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer"); *Barney v. State*, 698 S.W.2d 114, 124–25 (Tex. Crim. App. 1985) (holding that a witness's answer that a victim did not like the defendant because "he was an ex-con," which violated the defendant's motion in limine, was improper but was cured by a jury instruction).

alleged violations in one hearing at a later date.[21] However, there is no indication that a later hearing addressing all of the violations would not have produced the same result (i.e., revocation and a five-year sentence) as the two separate hearings did in this case. A trial judge is given wide latitude to determine the appropriate sentence in a given case. *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984). We cannot step into the shoes of the trial court judge and substitute our judgment for hers unless that judge has clearly abused her discretion. We hold that she did not.

### IV. CONCLUSION

We conclude that, under the specific facts of this case, appellant's due process rights were not violated. We reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

DELIVERED: May 13, 2015

PUBLISH

---

[21] Article 42.12, §21(b-2) of the Texas Code of Criminal Procedure provides that "the state may amend the motion to revoke community supervision any time up to seven days before the date of the revocation hearing, after which time the motion may not be amended except for good cause shown . . . . The judge may continue the hearing for good cause shown by either the defendant or the state."