

# NUMBER 13-15-00583-CR

# COURT OF APPEALS

# THIRTEEN DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **JESSE SALAZAR AKA JESSIE SALAZAR,** | **Appellant,** |
| **v.** | |
| **THE STATE OF TEXAS,** | **Appellee.** |

### On appeal from the 117th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Justice Rodriguez**

Appellant Jesse Salazar, a.k.a. Jessie Salazar, was charged with assault of his then-girlfriend Maria Carrejo. At trial, the State introduced evidence that Salazar impeded Carrejo's normal breathing by choking her and that he had been previously

convicted of assault of another girlfriend. Salazar pleaded true to enhancement allegations that he had two prior felony convictions. After a bench trial, the trial court found Salazar guilty, convicted him of a second-degree felony, and assessed punishment at fifty years' confinement as a habitual felony offender. *See* TEX. PENAL CODE §§ 12.42, 22.01(a)(1), (b-1) (West, Westlaw through 2015 R.S.).

Salazar raises two issues on appeal. He first contends that he was "not afforded Due Process under the Morton Act because the State withheld discovery that had been timely requested"—specifically, that he was denied access to recordings of inculpatory phone calls between himself and Carrejo. Salazar next contends that he was denied his right to a fair trial before an impartial and unbiased judge. We affirm.

## I. BACKGROUND

At trial, the State sought to introduce clips from phone conversations between Salazar and Carrejo, which were recorded while Salazar was incarcerated awaiting trial. The State reported that it was unable to locate Carrejo or arrange for her to appear at trial, and Salazar filed a motion objecting to the call recordings on the basis of the Confrontation Clause. The State believed that it could nonetheless introduce the calls under the "forfeiture by wrongdoing" exception to the Confrontation Clause; according to the State, the recordings featured Salazar threatening Carrejo, telling her that if he was convicted, he would "find" her.[1] *See, e.g.*, *Giles v. California*, 554 U.S. 353, 360 (2008). Counsel for Salazar denied that he was in contact with Carrejo or knew where she was.

---

[1] Based upon our review of the record, the trial court listened to this recording, and the court's comments during the hearing show that it clearly found the message to have a threatening quality.

The trial court eventually denied Salazar's motion concerning the Confrontation Clause and allowed the State to rely on recordings of the phone conversations.

However, later that same day, Carrejo appeared at trial and testified. She explained that counsel for Salazar had called her that afternoon and said "he needed me in the courtroom." She testified that Salazar's daughter drove her to the courthouse.

Salazar was then able to confront Carrejo and examine her extensively, and Carrejo in fact gave testimony that was highly favorable to Salazar. She testified that anything she allegedly told officers on the evening in question was not true, that she was drunk that evening, and that she fabricated the incident because she was angry at Salazar and "wanted to make his life hell." According to Carrejo, Salazar's ex-wife had been causing problems for Carrejo and had regularly visited Salazar in jail, upsetting Carrejo and inflaming her relationship with Salazar. As to Salazar's comment during a call that if anything happened to him at trial, he would come find her, she explained that this was not a threat; it meant Salazar would always seek her out, even if convicted, because she and Salazar loved one another. When the State offered another jail phone call in which Carrejo told Salazar "you shouldn't have choked me in front of everyone," she testified that this too was a lie based on anger.

Furthermore, Carrejo disputed the testimony of investigating officers. The officers testified that they had responded to multiple calls from third parties regarding a man assaulting a woman inside a nightclub and, later, a man chasing a woman near a convenience store. The investigating officers variously reported that they had observed Salazar chasing Carrejo, had found Carrejo "visibly shaken" and crying, had observed

red marks on Carrejo's neck, arms, hands, and chest, and had seen fresh blood on her mouth. Officers took photographs of the marks, which were offered at trial. According to the officers, Carrejo was difficult to understand through her crying, but related that she had been choked by Carrejo and was in pain. The officer concluded, based on their experience investigating many confirmed cases of family violence, that these marks were most consistent with assault. By contrast, at trial, Carrejo testified that she had received these marks and injuries from a sexual encounter with an ex-girlfriend on the same night, and the reason she had been running barefoot near a convenience store at 2:00 AM was to find a payphone and to use the restroom at the store.

## II. ALLEGED VIOLATION OF MORTON ACT AND DUE PROCESS

By his first issue on appeal, Salazar abandons his Confrontation Clause arguments. Instead, Salazar complains that the State wrongfully failed to provide him with the jail call recordings despite his timely request, and the State thereby violated the Morton Act and, by extension, the Due Process Clause. *See* TEX. CRIM. PROC. CODE ANN. art. 39.14 (West, Westlaw through 2015 R.S.); *see also Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Ex Parte Miles*, 359 S.W.3d 647, 665 (Tex. Crim. App. 2012) (orig. proceeding). However, Salazar did not raise this argument before the trial court, and prior to trial, counsel for Salazar acknowledged that he had previously heard the call recordings and was familiar with their content. Salazar has waived this issue for purposes of his appeal. *See* TEX. R. APP. P. 47.1; *Pena v. State*, 285 SW3d 459, 464 (Tex. Crim. App. 2009) ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial."); *see also*

4

*Yates v. State*, 941 S.W.2d 357, 364 (Tex. App.—Waco 1997, pet. ref'd) (discussing waiver of *Brady* violations for untimely disclosure of evidence). We overrule Salazar's first issue.

### III. ALLEGED PARTIALITY OF TRIAL COURT

By his second issue, Salazar contends that he was deprived of his Due Process rights to a fair trial before an impartial judge, citing *Brown v. Vance*, 637 F.2d. 272, 281 (5th Cir. 1981) and *Bray v. Gramely*, 520 U.S. 899, 904–05 (1927). As we understand Salazar's argument, the trial court's bias is shown by two aspects of this case: that the trial court did not believe Carrejo's recantation and her testimony that the assault never occurred, and that the court assessed a high sentence—fifty years—as punishment. That is, Salazar does not appear to challenge the evidence as insufficient or challenge the sentence as excessive, per se; instead, he challenges the trial court's neutrality as it is reflected by these problems.

### A. Applicable Law

This Court has held, in a different context, that a defendant has an absolute right to an impartial judge. *Hernandez v. State*, 268 S.W.3d 176, 184 (Tex. App.—Corpus Christi 2008, no pet.); *see Fears v. State*, 479 S.W.3d 315, 339 (Tex. App.—Corpus Christi 2015, pet. ref'd). Bias by an adjudicator is not lightly established. *Celis v. State*, 354 S.W.3d 7, 24 (Tex. App.—Corpus Christi 2011), *aff'd*, 416 S.W.3d 419 (Tex. Crim. App. 2013). Absent a clear showing of bias, we presume that the trial court is impartial. *Tapia v. State*, 462 S.W.3d 29, 44 (Tex. Crim. App. 2015); *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006).

5

It is well established that in a sufficiency review, the factfinder is the exclusive judge of the weight and credibility of the evidence. *Wise v. State*, 364 SW3d 900, 903 (Tex. Crim. App. 2012). Unless the available record clearly reveals a different result is appropriate, an appellate court must defer to the factfinder's determination concerning what weight to give contradictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor. *Johnson v. State*, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000) (en banc); *see Watson v. State*, 204 S.W.3d 404, 443 (Tex. Crim. App. 2006). A factfinder is duly entitled to disbelieve a witness's recantation of a prior statement. *Saldana v. State*, 287 S.W.3d 43, 60 (Tex. App.—Corpus Christi 2008, pet. ref'd).

As to Salazar's allegations concerning excessive sentencing, a punishment which falls within the legislatively prescribed range and that is based upon the trial court's informed normative judgment is unassailable on appeal, subject to a limited and rare exception for Eighth Amendment gross-disproportionality review. *Barrow v. State*, 207 S.W.3d 377, 381 (Tex. Crim. App. 2006). The Texas Court of Criminal Appeals "has traditionally held that punishment assessed within the statutory limits, including punishment enhanced pursuant to a habitual-offender statute, is not excessive, cruel, or unusual." *State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016). Under penal code section 22.01(a)(1), a person commits assault if the person intentionally causes bodily injury to another. TEX. PEN. CODE ANN. § 22.01(a)(1). Such an assault is a felony of the second degree if:

> (1) the offense is committed against a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code;

6

> (2) it is shown on the trial of the offense that the defendant has been previously convicted of an offense under this chapter, Chapter 19, or Section 20.03, 20.04, or 21.11 against a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code; and
>
> (3) the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth.

*Id.* § 22.01(b-1).   The habitual felony offender statute provides as follows:

> Except as provided by Subsection (c)(2) or (c)(4), if it is shown on the trial of a felony offense other than a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years.

*Id.* § 12.42.

## B.    Analysis

Here, Salazar argues that the trial court showed its bias by not giving conclusive weight to Carrejo's recantation.   However, the trial court had heard a recorded call which could have reasonably been interpreted as a threat of retribution to Carrejo.   The court also received an authenticated copy of Salazar's previous conviction for family violence assault, as well as testimony that Salazar was a professed member of the Texas Syndicate, a Texas prison gang.   The trial court had been led to believe that neither side knew Carrejo's whereabouts, only to have counsel for Salazar produce Carrejo after his Confrontation Clause motion was denied.   Finally, Carrejo's testimony contradicted a great deal of evidence which was collected on the night in question.   As the State points

7

out, unfortunately, recantation is not an uncommon phenomenon in this type of case. *See, e.g., O'Laughlin v. O'Brien*, 577 F.3d 1, 4 (1st Cir. 2009) (quoting T. Linger, *Prosecuting Batterers After* Crawford, 91 VA. L. REV. 747, 768 (2005)) ("Recent evidence suggests that 80 to 85 percent of battered women will recant at some point."). The trial court seems to have drawn perfectly rational inferences and credibility determinations from this conflicting evidence, *see Johnson*, 23 S.W.3d at 8, and no bias is evident in the trial court's decision to discount Carrejo's recantation and related testimony. *See Saldana*, 287 S.W.3d at 60; *see also Celis*, 354 S.W.3d at 24.

As to Salazar's attempt to show bias by way of excessive sentencing, the trial court assessed a fifty-year sentence that fell squarely within the legislatively prescribed range of possible sentences: life, or "any term of not more than 99 years or less than 25 years." *See* TEX. PEN. CODE ANN. §§ 12.42, 22.01(a)(1), (b-1); *Barrow*, 207 S.W.3d at 381. Indeed, Salazar's sentence was below the median of these possible sentences. Salazar does not challenge this sentence as grossly disproportionate, and he does not bring any other facts to our attention which would potentially suggest that the sentence was an indication of bias. *See Simpson*, 488 S.W.3d at 323.

In sum, Salazar does not properly challenge the sufficiency of the evidence or the inferences that it reasonably supports, and he does not challenge the excessiveness of the sentence. Instead, he questions the trial court's integrity for drawing these inferences in a natural and logical progression towards this sentence. Salazar has made no showing of bias, let alone the clear showing required under our constitutional jurisprudence. *See Tapia*, 462 S.W.3d at 44. We therefore presume that the trial court

8

was impartial.  *See id.*  We overrule Salazar's second issue.

## IV.  CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
20th day of October, 2016.

9