

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00218-CR
_____

REGINALD BYRD, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 3
Tarrant County, Texas
Trial Court No. 1529236D

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I.  Introduction

Appellant Reginald Byrd appeals from the revocation of his community supervision and the resulting six-year sentence after he pleaded true to violating five community-supervision conditions.  In a single issue, Byrd argues that the trial court violated his federal due-process rights because the alleged violations were based on his inability to afford transportation.  Because there is a preponderance of evidence to support at least one violation that was not based on Byrd's ability to afford transportation, we hold that the trial court did not violate Byrd's due-process rights and did not abuse its discretion by revoking his community supervision.  Accordingly, we affirm.

## II.  Background

On September 4, 2018, Byrd pleaded guilty, pursuant to a plea agreement, to the third-degree felony of driving while intoxicated (DWI)–felony repetition.  *See* Tex. Penal Code Ann. § 49.09.  Following the terms of this plea, the trial court found Byrd guilty, sentenced him to six years' incarceration and ordered him to pay a $400 fine, suspended imposition of the sentence but not the fine, and placed him on community supervision for four years.  The trial court imposed numerous community-supervision conditions, including the requirements that Byrd report monthly to his community-supervision officer, that he submit valid urine samples when requested, that he

successfully complete the DWI victim-impact panel and the DWI repeat-offender program, and that he submit to electronic alcohol monitoring.

On January 11, 2019, the State filed a petition to proceed to revoke community supervision, alleging that Byrd had failed:

- To report to his community-supervision officer at any time during the months of October, November, and December 2018;

- To provide a urine sample on or about September 12, 2018, and September 14, 2018;

- To enroll in the DWI repeat-offender program;

- To attend the victim-impact panel on or about September 25, 2018; and

- To install the IN HOM electronic monitor by September 19, 2018.

At the revocation hearing, Byrd pleaded "true" to each of the allegations in the State's petition. Byrd testified that when he was placed on community supervision, the plan was for his common-law wife, Cassandra, to provide transportation. Byrd initially agreed that Cassandra had traveled back and forth to North Carolina to visit her ailing daughter, but then he clarified that "she did it once -- once then she -- she got a U-Haul[,] and they drove back." The timing of these events is not clear from the record.

Byrd testified that he reported to the community-supervision office on Altamesa Boulevard on September 12 and was told to submit a urine sample at another location. Byrd testified that there was not a lab at the Altamesa office. Byrd

said that there "wasn't enough time in the day" to take the bus to the other location. Byrd testified that he was instructed to go back two days later on September 14, 2018, and was told that he had already violated a condition of his community supervision by not going for the urine test on September 12. Byrd said that he did not have any money for transportation on September 14, so he "violated again." Byrd testified that he did not know to ask the probation department for bus passes because he did not know that they offered them and because "[i]t was all new to [him]."

Byrd explained that he had not attended the DWI repeat-offender program because the class located on the bus route had started "a day or two" before he had contacted "them" and the other class was not on the bus route. When the class located on the bus route ended, there was a break before the next class started, and by that time, he was in jail.

Byrd testified that he did not complete the victim-impact panel. He explained that although he could take the bus to the class, the bus schedule did not provide a route for him to get home from the class.

Byrd said that he told his probation officer that he could not afford the up-front fee for the in-home interlock device that he was ordered to install. Byrd testified that he had no power at his home because he was not able to pay the electricity bill.

Queinton Waldon, a probation officer, testified that with regard to the location for submitting urine samples, all who are on community supervision are "given the

4

option to either submit the urine test at the main office, which is downtown here at the central probation office, or they can do it at the office that they are assigned." Waldon said that Byrd was given the option of the downtown facility because "he [was] closer to downtown." Waldon testified that Byrd could have submitted a urine sample at the Altamesa location on September 12 while he was there for his intake meeting.

After hearing testimony from Byrd and Waldon, the trial court found the allegations in the State's petition to be true and sentenced Byrd to six years' confinement. Byrd then perfected this appeal.

### III. Standard of Review

We review an order revoking community supervision under an abuse-of-discretion standard. *See Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013). In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated at least one of the terms and conditions of community supervision. *Bryant v. State*, 391 S.W.3d 86, 93 (Tex. Crim. App. 2012); *Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006). The trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's ruling. *Hacker*, 389 S.W.3d at 865; *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). If the State fails to meet its burden of proof, the trial court abuses its discretion by revoking community supervision. *Cardona*, 665 S.W.2d at 493–94. A finding of a single violation of

5

community supervision is sufficient to support a revocation. *See Smith v. State*, 286 S.W.3d 333, 342 (Tex. Crim. App. 2009). Further, a defendant's plea of true generally is sufficient on its own to support a trial court's decision to revoke community supervision. *See Tapia v. State*, 462 S.W.3d 29, 31 n.2 (Tex. Crim. App. 2015); *Leonard v. State*, 385 S.W.3d 570, 576 (Tex. Crim. App. 2012) (op. on reh'g).

## IV. A Single Violation When Transportation Was Not an Issue Supports Revocation

In his single issue, Byrd argues that the trial court abused its discretion by revoking his community supervision and sentencing him to six years' confinement. Specifically, Byrd argues that he was unable to abide by the conditions of his community supervision because he lacked transportation and could not make other arrangements due to his poverty. Byrd thus argues that he was denied his due-process rights because the trial court failed to make the required inquiries regarding Byrd's inability to afford transportation.

As set forth above, Byrd pleaded "true" to all five violations alleged in the State's petition. Thus, Byrd pleaded true to the allegation in paragraph 2 of the State's petition that he had failed to provide a urine sample on or about September 12, 2018, and September 14, 2018. The record revealed that Byrd had appeared at the Altamesa probation office on September 12, 2018; that he was requested to provide a urine sample; and that he had failed to provide a urine sample. Byrd does not dispute these facts. Instead, he relies on his testimony that the Altamesa probation office did not

have a lab, that he was told to go to another probation office to provide his urine sample, and that the bus could not get him to that office before it closed. The trial court, as the sole judge of the witnesses' credibility and the weight to be given their testimony, was free to disbelieve Byrd's testimony and to instead believe Waldon's testimony that Byrd could have submitted his urine sample at the Altamesa probation office. *See Hacker*, 389 S.W.3d at 865; *Cardona*, 665 S.W.2d at 493. Because Byrd was already at a probation office on September 12 that would have accepted a urine sample had he provided one, his due-process argument—that he was unable to comply with his community-supervision conditions because he lacked transportation due to his poverty—does not apply to this violation. *See, e.g., Rowley v. State*, No. 02-17-00107-CR, 2017 WL 5895184, at *2 (Tex. App.—Fort Worth Nov. 30, 2017, no pet.) (mem. op., not designated for publication) (overruling appellant's issue, which asserted that his due-process rights were violated when his community supervision was revoked based on an inability to pay, because his community-service violation did not involve his inability to pay); *cf. Adams v. State*, No. 11-12-00337-CR, 2015 WL 581753, at *2 (Tex. App.—Eastland Feb. 5, 2015, no pet.) (mem. op., not designated for publication) (determining that it need not consider appellant's due-process contention because the evidence was sufficient to prove that appellant had violated at least one term of his community supervision that was unrelated to his failure to pay).

Reviewing the evidence in the light most favorable to the trial court's ruling, we hold that the State proved by a preponderance of the evidence that Byrd violated the

condition of his community supervision that required him to submit to random urinalysis testing by failing to submit a urine sample on September 12, 2019.[1] Accordingly, we hold that the trial court did not abuse its discretion by revoking Byrd's community supervision and sentencing him to six years' confinement. *See Striblin v. State*, Nos. 04-17-00825-CR, 04-17-00835-CR, 2018 WL 6624894, at *2–3 (Tex. App.—San Antonio Dec. 19, 2018, no pet.) (mem. op., not designated for publication) (holding that trial court did not abuse its discretion by revoking appellant's community supervision on the ground that he had failed to submit a urine sample on a single date); *McWilliams v. State*, No. 02-14-00142-CR, 2014 WL 7204509, at *2 (Tex. App.—Fort Worth Dec. 18, 2014, pet. ref'd) (mem. op., not designated for publication) (same). We therefore overrule Byrd's sole issue.

## V. Conclusion

Having overruled Byrd's sole issue, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: November 7, 2019

---

[1]Although the specific condition requiring Byrd to submit urine samples upon request by his probation officer also contains a provision requiring him to pay for such tests, the State did not allege, and the trial court did not find, that Byrd had violated the conditions of his community supervision by failing to pay for urine tests.