# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00427-CR

---

**Christopher Michael Haynes, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 207TH DISTRICT COURT OF HAYS COUNTY
### NO. CR-18-0310-B, THE HONORABLE JACK H. ROBISON, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

A jury convicted appellant Christopher Michael Haynes of the third-degree felony offenses of possession of a controlled substance and unlawful possession of a firearm by a felon. Tex. Health & Safety Code § 481.115(c); Tex. Penal Code § 46.04(a). Each offense was enhanced by a prior felony conviction, to which appellant pleaded true, and the trial court assessed punishment at eight years' confinement in the Texas Department of Criminal Justice ("TDCJ") for each count, with the sentences to run concurrently. Tex. Penal Code §§ 12.42(a), 46.04(a); Tex. Health & Safety Code § 481.115(c). In two issues, appellant challenges the trial court's denial of his requested Article 38.23 jury-charge instruction and its alleged failure to consider the full range of punishment. We affirm the trial court's judgments of conviction.

## BACKGROUND

San Marcos Police Department Officer Manuel Alvarado was dispatched to the Nest Apartments in San Marcos, Texas, at approximately 3:45 a.m. on March 1, 2018. At trial, Alvarado testified that he was in full, dark-navy-blue uniform, with a short-sleeved shirt and ball cap. Body cam footage admitted at trial shows that the cap was marked with the SMPD logo. Alvarado's uniform also included a utility belt, badge, SMPD patches on each shoulder, and a body camera centered on his shirt. Alvarado testified that the call was for "suspicious circumstances"; officers on scene advised that several males were fleeing, while other suspects were detained at gunpoint. The radio report stated that one of the fleeing suspects was wearing a red shirt or sweatshirt. Due to what he termed "auditory exclusion," Alvarado testified that he only heard that someone was wearing a jacket, not its color. Alvarado parked his marked patrol car near another at the front of the apartment complex and exited on foot. Neither car had its overhead or emergency lights on.

While walking toward the back of the complex, from which the suspects had fled, Alvarado observed an individual walking on the other side of the parking lot. The individual appeared to be a Hispanic male wearing blue jeans and a dark jacket, which Alvarado found unusual due to the weather. Alvarado "shuffled" or "ran" to the middle of the parking lot and called out to the man. Alvarado testified that the area where he was standing was next to a security light and very well lit. While Alvarado testified that he would have appeared backlit to the man, he also testified that there was "light everywhere," including from a light source in front of Alvarado. Alvarado testified that he told the man to "stop and come here," but he could not be certain if he said, "Police, stop." Video from Alvarado's body cam did not record audio from the beginning of the encounter. At no point during the video can Alvarado be heard identifying

2

himself as a law enforcement officer. Elsewhere on the video, the man, who was subsequently identified as appellant, states, "I didn't know it was the police." However, appellant, when speaking with Alvarado, also states, "When you said, 'Police, freeze,'" and, when Alvarado states, "When I said, 'Police—,'" appellant completes the statement, "'—freeze.'" Alvarado likewise asserts on the video, "Even though I said, 'Police, stop!' several times, you still ran . . . . You were walking by yourself. Then I said, 'Hey, come here, police!' You took off running. I said, 'Stop!' several times."

Alvarado testified appellant turned his head to look at him, saw him, and ran. Alvarado chased appellant, warning him that he would be tased if he did not stop. Appellant continued running, and Alvarado tased him. Appellant fell to the ground, and Alvarado placed him in handcuffs. Corporal Matthew Daenzer arrived and assisted Alvarado in searching appellant. Alvarado testified that at this time appellant was under arrest for evading on foot. Although Alvarado had not seen any objects on the ground while pursuing appellant, a white sunglasses case was discovered during the search near appellant's feet.

Corporal Daenzer testified that appellant was moved to a nearby curb, where he sat down, and the sunglasses case was positioned a couple of feet away from him. Daenzer witnessed appellant grab the sunglasses case and open it, while trying to hide the case from view. The case was found to contain money; unused plastic baggies; and substances that appeared to be marijuana and cocaine. Daenzer and Alvarado also discovered a handgun tucked into the back of appellant's waistband. Appellant was then placed in the back of a patrol car and Mirandized.

Alvarado, Daenzer, and Sergeant Tiffany Williams testified to conflicting statements made by appellant explaining the weapon and his presence at the apartment complex. Alvarado testified that appellant explained he had been drinking and was at the apartments to

3

protect his cousin.[1] Appellant also claimed that a man had pointed a gun at his head and run away, so appellant was chasing him. Daenzer testified that he heard appellant, on a phone call with his mother, explain that he was at the apartments to help his cousin with something. Williams testified that appellant told her the gun was already on the ground and he had fallen on top of it when tased by Alvarado.

SMPD Detective Travis Davidson testified concerning events at the complex preceding the dispatch call to which Alvarado responded. At approximately 3:40 a.m., five minutes prior to Alvarado's arrival, Davidson responded to a call of a Hispanic male knocking on the door of an apartment. The individual inside did not recognize the man and called 911 because he was afraid. Davidson testified that the parking lot near the back of the complex was "kind of lighted – or lit." He saw a group of individuals standing between two cars. The group fled when they saw him. Davidson announced himself as a police officer and called for the individuals to stop, "but they were already scattered in two directions." Davidson encountered a man matching the description provided by the 911 caller. As Davidson approached, the man threw a long knife to the ground. Davidson testified that a total of three knives and one handgun were recovered at the complex that night as part of the larger investigation.[2] Around the time the man was throwing the knife, Davidson heard Alvarado yelling on the radio that he had tased a running individual.

---

[1] On the video, appellant states, "I was scared because I was drinking a beer," as Alvarado explains the encounter to Daenzer.

[2] Sergeant Williams testified that Yvette Diffut, a resident at the complex, had told her boyfriend, Charles Brandon Crayton, that she was worried her children's father was going to come to her apartment and harm her. Crayton, appellant's cousin, gathered several of his friends and waited at the complex "to do whatever needed to be done to take care of Yvette's baby daddy." These were the men encountered by Officer Davidson in the parking lot. At some point, one of the members of the group called appellant, who came in his own car.

4

Katherine Surma, a forensic scientist with the Austin Police Department, tested the suspected cocaine seized from appellant and testified that the substance tested positive for cocaine with a net weight of approximately 2.1 grams.

Appellant testified in his own defense at trial. He explained that he had lied repeatedly to officers during the encounter on March 1, 2018. He had in fact possessed the firearm but had lied to officers because he was afraid and intoxicated. He had also lied about a gun being pointed at him. Although he had run from Alvarado, appellant testified that he did not know Alvarado was a police officer. He could not see his badge or identify anything on his uniform to indicate he was an officer. Appellant testified that he saw only "a dark image wearing a baseball hat." He also testified that Alvarado never said anything to identify himself as a police officer, and he learned Alvarado was an officer for the first time as he was being "detained."

On cross-examination, appellant conceded that he knew there were drugs in the sunglasses case, but they were for personal use. Appellant testified that he was walking to his vehicle when he saw a "dark image," which said, "Hey, come here, let me holler at you," or, "Come here and let me talk to you."[3] Although appellant testified that he was aware there were "multiple light sources in that area," he kept walking because he did not know "who the image was." Appellant testified that he went to a corner and heard people running or a commotion, so he began running as well. Conversely, appellant testified, "I saw the people running, and then I walked off. And then I saw the dark image as soon as I walked off." At the corner, appellant drank from the can of beer he had been carrying and put it down. He was at the corner for

---

[3] Appellant's narrative provides seemingly conflicting facts and chronologies, and at times conflicts with the body cam footage admitted at trial.

approximately twenty seconds when he began running again because he "didn't know what was going on" and "felt like it was good to get out of the situation." Appellant testified that he did not see the image while he was at the corner, but as he ran, he heard footsteps and saw somebody chasing him. He heard the person say, "Stop," and then he was tased.

Following the close of evidence, appellant requested a jury instruction on the exclusion of illegally obtained evidence under Article 38.23 of the Texas Code of Criminal Procedure. After considering briefing by both parties, the trial court denied the request. Both sides made their closing arguments, and the jury found appellant guilty of both counts. The trial court ordered a pre-sentencing investigation ("PSI").

A punishment hearing was held approximately two months later. Appellant had elected that the trial court assess punishment. The trial court heard testimony concerning extraneous offenses, as well as from appellant's mother, and the judge sua sponte called a probation officer to speak to various options for treatment. The trial court found both enhancement paragraphs true and sentenced appellant to eight years' confinement in TDCJ for each count, with the sentences to run concurrently. Appellant filed a timely notice of appeal, and this appeal followed.

## DISCUSSION

In two issues, appellant challenges the trial court's denial of his requested Article 38.23 instruction and failure to consider the full range of punishment during his sentencing hearing.

**Jury Charge Error**

In his first issue, appellant contends that the trial court erred by denying his request for an instruction under Article 38.23 of the Texas Code of Criminal Procedure.

We review alleged jury charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). The degree of harm required for reversal depends on whether the jury charge error was preserved in the trial court. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (setting forth procedure for appellate review of claim of jury charge error). If the jury charge error has been properly preserved by an objection or request for instruction, *see* Tex. Code Crim. Proc. arts. 36.14, 36.15, reversal is required if the appellant has suffered "some harm" from the error, which means the error "was calculated to injure the rights of the defendant." *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020); *see Almanza*, 686 S.W.2d at 171. If the charge error was not properly preserved, the error requires reversal only if the appellant suffered "egregious harm," which occurs when the error "created such harm that the appellant was deprived of a fair and impartial trial." *Chambers v. State*, 580 S.W.3d 149, 154 (Tex. Crim. App. 2019); *see Almanza*, 686 S.W.2d at 171.

A trial court is statutorily obligated to instruct the jury on the "law applicable to the case." *See* Tex. Code Crim. Proc. art. 36.14; *Mendez*, 545 S.W.3d at 552; *see Oursbourn v. State*, 259 S.W.3d 159, 175–81 (Tex. Crim. App. 2008) (explaining circumstances under which various voluntariness issues become "the law applicable to the case"). The trial court's duty to instruct the jury on the "law applicable to the case" exists even when defense counsel

7

fails to object to inclusions in or exclusions from the charge. *Mendez*, 545 S.W.3d at 552; *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013). The trial court is "ultimately responsible for the accuracy of the jury charge and accompanying instructions." *Mendez*, 545 S.W.3d at 552 (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)).

Article 38.23 provides in relevant part:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

Tex. Code Crim. Proc. art. 38.23(a). Because the statute is mandatory, the trial court has a duty to submit an Article 38.23 instruction if three predicates are met: (1) the evidence heard by the jury raises an issue of fact; (2) the evidence on that fact is affirmatively contested; and (3) that contested factual issue is material to the lawfulness of the challenged conduct in obtaining the evidence. *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012). To raise a disputed fact issue, there must be some "affirmative evidence that puts the existence of that fact into question." *Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007); *see also Mills v. State*, 296 S.W.3d 843, 847 (Tex. App.—Austin 2009, pet. ref'd). Although a cross-examiner's questions do not create a conflict in the evidence, "the witness's answers to those questions might." *Madden*, 242 S.W.3d at 513.

Appellant at trial argued that he was entitled to an Article 38.23 instruction because it was disputed whether Officer Alvarado had identified himself as a police officer to

appellant. Appellant suggested that in the absence of this fact, Alvarado lacked probable cause to arrest him for evading arrest or detention. Therefore, appellant maintained that any evidence obtained as a result of the arrest, including the cocaine and handgun, should have been suppressed. On appeal, appellant broadens the purported basis for the instruction, alleging that a factual dispute existed on "two main issues": "(1) whether Appellant intentionally fled from a person he knew was a peace officer, and (2) whether the peace officer was lawfully attempting to arrest or detain him." Although appellant also references an additional "dispute over the lighting conditions that morning" while discussing the first issue, it is unclear whether he intends this as a third ground for the instruction. Liberally construing his brief, we will construe appellant's statement as alleging a third contested issue of fact.

With respect to the first alleged contested factual issue, appellant argues:

> [T]here was a factual dispute raised by Appellant's testimony that he didn't know that Alvarado was a police officer when he was being chased, and Alvarado was not certain as to whether he yelled that he was a police officer when he chased Appellant, coupled with the dispute over the lighting conditions that morning.

As noted above, this argument conflates two distinct factual issues: whether appellant knew Alvarado was a police officer and the lighting conditions during the encounter. We will first consider whether the former entitled appellant to an Article 38.23 instruction.

Appellant's testimony that he did not know Alvarado was a police officer was not affirmatively contested by Alvarado's testimony that he could not be certain if he said "police, stop." *Robinson*, 377 S.W.3d at 719. Alvarado's statement does not contradict Appellant's testimony. Moreover, equivocal testimony that a witness does not remember or know something is insufficient to create a factual conflict. *Madden*, 242 S.W.3d at 513. Consequently, under

9

the purported factual dispute alleged by appellant, he would not be entitled to his requested instruction.[4]

However, other evidence in the record creates an affirmatively contested factual issue. At trial, appellant testified that on Alvarado's body cam footage, he can be heard acknowledging that Alvarado said, "Police, freeze."[5] The exchange on the footage occurs as follows:

ALVARADO: "When I said, 'Police,—"

APPELLANT: "—freeze.'"

ALVARADO: "—freeze,' you took off running . . . ."

APPELLANT: "When you said, 'Police, freeze,' right before that dude had a gun to my [head]."

Nevertheless, when asked by defense counsel, "[Y]our testimony to this jury is that he did not say that [Police, freeze]," appellant responded, "He did not say that," directly contradicting both his and Alvarado's recorded statements.[6] Additionally, on the body cam footage, Alvarado

---

[4] Appellant also appears to suggest that his testimony that he did not know Alvarado was a police officer was affirmatively contested by his alleged statement on the body cam footage that "he knew Alvarado was the police." This Court has reviewed the footage, and no such statement was made by appellant.

[5] Video may constitute affirmative evidence for purposes of conducting an Article 38.23 instruction inquiry. *See Mills v. State*, 296 S.W.3d 843, 848 (Tex. App.—Austin 2009, pet. ref'd) ("[V]ideo [is] affirmative evidence capable of supporting the inference that Sherwood could not have seen—and did not see whether or not Mills had activated his turn signal within one-hundred feet of the intersection.").

[6] That appellant's testimony also affirmatively contradicted Alvarado's statement in the body cam footage vitiates the State's concern that allowing appellant to create a factual dispute by disavowing his own earlier statements at trial would lead to an absurd result. Regardless, the State's concern is ill-founded, as evidence justifying an Article 38.23 instruction can "derive 'from any source'" and be "weak, contradicted," or "unbelievable." *Robinson v. State*, 377 S.W.3d 712, 712 (Tex. Crim. App. 2012) (quoting *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004)).

states, "Even though I said, 'Police, stop!' several times, you still ran." At trial, appellant testified Alvarado never said anything to identify himself as a police officer to appellant prior to appellant's being tased.

Yet, while this evidence raises an affirmatively contested issue of fact—whether Alvarado announced himself a police officer to appellant—it is not "material to the ultimate admissibility of the evidence" and therefore did not entitle appellant to an Article 38.23 instruction. *Madden*, 242 S.W.3d at 510. In determining whether a contested fact is material, we ask whether "other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct." *Id*.

Appellant's briefing on appeal is silent with respect to a purported constitutional or statutory violation to which the first contested issue of fact is material. Indeed, the issue of materiality is wholly lacking from appellant's analysis. In a single paragraph addressing harm, appellant appears to suggest that he was illegally detained. However, there was no detention of appellant in the present case. *See Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995) ("[A]ppellant was not seized for purposes of Art. I, § 9, until he yielded to a show of authority by law enforcement officers. If appellant had not yielded to the officers' orders, he would not have been seized until he had been physically stopped or restrained by the officers."). Here, appellant, far from complying with Alvarado's command, began running and only stopped when tased.

Appellant was undoubtedly under arrest when tased and handcuffed by Alvarado. The Supreme Court has held that "the application of physical force to the body of a person with intent to restrain" is an arrest. *Torres*, 141 S. Ct. at 1003. This is true even where, such as here, an officer uses force "from a distance." *Id*. at 997. Alvarado himself testified at trial that appellant was "under arrest for evading on foot" when searched after being handcuffed. We

11

construe appellant's issue liberally and assume he asserts, as at trial, that in the absence of the contested fact, Alvarado lacked probable cause to arrest him for evading arrest or detention.

Section 38.04 of the Texas Penal Code provides that an individual commits an offense if he "intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him." A police officer may arrest an offender without a warrant for an offense committed in his presence or within his view. Tex. Code Crim. Proc. art. 14.01(b). Probable cause for a warrantless arrest under article 14.01(b) may be based on an officer's "prior knowledge and personal observation"; the officer may rely on "reasonably trustworthy information provided by another person in making the overall probable cause determination." *State v. Woodard*, 341 S.W.3d 404, 412 (Tex. Crim. App. 2011). The ultimate question is "whether at that moment the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense." *Id*. Probable cause involves "a greater level of suspicion than reasonable suspicion but falls far short of a preponderance of the evidence standard." *State v. Ford*, 537 S.W.3d 19, 23–24 (Tex. Crim. App. 2017) (internal quotation marks omitted).

Aside from the contested factual issue, there were other facts adduced at trial sufficient to establish probable cause. It was undisputed that appellant fled from Alvarado. The defense focused on whether appellant knew Alvarado was a police officer and whether Alvarado's attempt to detain appellate was lawful.

Relevant to this case, Alvarado was dressed in full uniform, including a badge; ball cap and shoulder patches with the SMPD log; shoulder-mounted flashlight; and utility belt. He arrived in a marked patrol car. Other officers, and at least one additional patrol car, were

12

already at the complex.[7]  Alvarado testified that when appellant turned to look at him after he called out, Alvarado was standing in a "very well-lit area" near a security light.  When asked on cross-examination whether he would have appeared backlit because of a light behind him, Alvarado agreed but added, "There is light everywhere."  On re-direct, he added that there was also a light source in front of him.  Even appellant conceded on cross-examination that he was aware there were "multiple light sources in that area."  The question is not whether appellant in fact recognized Alvarado as a police officer but whether a prudent person would have been warranted, in these circumstances, in believing he did.  We conclude he would have.

Appellant also challenges the existence of probable cause to believe he was evading a lawful attempt to detain him.  To that end, appellant argues Alvarado lacked reasonable suspicion to conduct an investigatory detention.  "A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014) (quoting *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011)). These facts must amount to more than a "mere inarticulate hunch" or "suspicion." *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010).  In determining whether an officer had reasonable suspicion, we must look at "the totality of the circumstances." *Id*.  The inquiry is objective and disregards the officer's subjective intent. *Id*.  However, "[a] police officer's reasonable mistake about the facts may yet legitimately justify his own conclusion that there is probable cause to arrest or reasonable suspicion to detain." *Robinson*, 377 S.W.3d at 720.

---

[7] While the officers were on the other side of the complex, the patrol cars were parked in the lot where Alvarado encountered appellant.

13

Circumstances which may "seem innocent in isolation" will "support an investigatory detention if their combination leads to a reasonable conclusion that criminal activity is afoot." *Matthews*, 431 S.W.3d at 603. Time of day and level of criminal activity in an area, while not suspicious in and of themselves, are factors to consider in determining reasonable suspicion. *Crain*, 315 S.W.3d at 53.

The facts available to Alvarado at the time of the attempted detention were sufficient to establish reasonable suspicion. The encounter with appellant took place around 3:45 a.m. Alvarado had received a call approximately five minutes earlier, informing him that several individuals at the apartment complex had fled from officers, who had detained others on the ground at gunpoint. When the encounter occurred, appellant was coming from the direction of the fleeing suspects and traveling "in the proper direction from that area," according to Alvarado's testimony. Appellant was wearing a jacket and blue jeans, which Alvarado found to be unusual because of the weather. The dispatch had stated that one of the suspects was wearing a red jacket or sweatshirt. At trial, Alvarado testified that due to "auditory exclusion," it is common to be provided so much information over the radio that officers grasp only certain details of what a subject looks like. Consequently, he testified that he heard someone was wearing a jacket and not the color. Given the totality of the circumstances, Alvarado could reasonably conclude that appellant was, had been, or soon would be engaged in criminal activity. *Matthews*, 431 S.W.3d at 603.

Accordingly, we conclude that because the contested fact issue was not material, appellant was not entitled to an Article 38.23 instruction.

The second dispute by which appellant contends he is entitled to his requested instruction is "whether the peace officer was lawfully attempting to arrest or detain him."

14

Although the State argues that appellant failed to preserve this issue, preservation in the context of jury charge error goes only to the degree of harm needed for reversal. "[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).

The *Almanza* standard is also proper where appellant on appeal grounds a claim of jury charge error in a different factual or legal basis from that presented at trial. As the Court of Criminal Appeals explained in *Medina v. State*:

> As appellant's objection at trial does not comport with his objection on appeal, his present objection was not preserved. As he alleges this particular jury charge error for the first time on appeal, appellant must establish that egregious harm arose from the alleged error, that is, that he was denied a fair trial.

7 S.W.3d 633, 639 (Tex. Crim. App. 1999). Consequently, we find that while appellant's present claim is not waived, it is subject to the more stringent "egregious harm" standard should error exist.

Assuming that the second fact issue identified by appellant was contested by affirmative evidence at trial, it does not entitle appellant to an Article 38.23 instruction. Such an instruction must be included in the jury charge "only if there is a *factual* dispute about how the evidence was obtained." *Garza*, 126 S.W.3d at 85 (emphasis added). Where, instead, the issue involves a question of law or the proper application of the law to undisputed facts, that issue is properly left to the determination of the trial court. *See Robinson*, 377 S.W.3d at 719; *Mills*, 296 S.W.3d at 845 ("Whether reasonable suspicion is present is a question of law for the trial court."). If the suppression question is one of law only, "[t]here is, of course, nothing to instruct the jury about." *Holmes v. State*, 248 S.W.3d 194, 199 (Tex. Crim. App. 2008).

15

Appellant's second alleged disputed fact concerns the existence or nonexistence of reasonable suspicion and probable cause. As the Court of Criminal Appeals in *Madden* noted, "The jury, however, is not an expert on legal terms of art or the vagaries of the Fourth Amendment. It cannot be expected to decide whether the totality of certain facts do or do not constitute 'reasonable suspicion' under the law." 242 S.W.3d at 511. Thus, because appellant's second contested issue involves a legal, and not factual, matter, it does not entitle him to an Article 38.23 instruction.[8]

Lastly, to the extent appellant intends his passing reference to "the dispute over the lighting conditions that morning," to form the basis for a third issue warranting an Article 38.23 instruction, his argument is likewise without merit.[9] Although the dispute alleged by appellant is unclear, there is no affirmative evidence contesting the lighting conditions at trial. As discussed above, Alvarado testified that the lighting was "[f]airly lit in the area where [he] was standing [when he called out to appellant]. Directly at the corner where [he] was standing in the middle of the apartment complex of that parking lot was a very well-lit area with a -- kind of like a security light." The next discussion of lighting occurred on cross-examination. The exchange was as follows:

> DEFENSE COUNSEL: "All right. And so the light's behind you because the shadow is in front of you, correct? Is that correct?"
>
> ALVARADO: "Yes."
>
> DEFENSE COUNSEL: "So you're backlit at this point, correct?"
>
> ALVARADO: "Yes, sir."

---

[8] Moreover, we have already concluded that Alvarado had reasonable suspicion to detain him and probable cause to arrest him.

[9] The State again argues that this issue was not preserved. We addressed this argument above.

16

. . . .

> DEFENSE COUNSEL: "So the light's behind you, correct? Because your shadow is in front of you, correct?"

> ALVARADO: "There is light everywhere."

> DEFENSE COUNSEL: "Officer, my question is: That's your shadow, correct?"

> ALVARADO: "Yes."

> DEFENSE COUNSEL: "And so there is a light source behind you, correct?"

> ALVARADO: "Yes, sir."

On re-direct, Alvarado explained that there was also a light source in front of him. And appellant testified that there were "multiple light sources in that area." None of this testimony, and no evidence from the body cam footage, creates an affirmatively contested issue of fact. The presence of a light source behind Alvarado does not preclude another in front of him. Indeed, both Alvarado and appellant agreed that there were several light sources near their encounter. Accordingly, appellant fails to satisfy the second prong of *Madden* and *Robinson* and an Article 38.23 instruction is therefore not warranted. We overrule appellant's first issue.

**Failure to Consider the Full Range of Punishment**

In his second issue, appellant contends that the trial court prejudged the evidence and failed to consider the full range of punishment at his sentencing hearing. At issue is the following exchange between the trial court judge and State at the start of the hearing:

> STATE: "What we are going to be showing you today is a number of extraneous offenses. I have one incident that occurred just prior -- I believe it's a month prior to the incident that you heard – the jury heard and decided, which is a misdemeanor DWI, which led into a felony drug possession case, state jail POCS, for methamphetamine and cocaine. Following the Defendant's arrest for that incident, he was taken to the Hays County jail, where he assaulted an inmate.

17

And we are going to present video and some photographs from that incident as well.

Probation's recommendation is for probation, which we are going to be arguing strongly against, given the Defendant's criminal history and the extraneous offenses."

THE COURT: "I can't tell from the PSI what happened on some of these misdemeanors. They all say, 'plea, sentencing,' but they don't show any disposition."

STATE: "Those are the ones that are set, Judge."

DEFENSE COUNSEL: "Those are pending."

STATE: "Those are the ones we are going to be proving up for you today."

THE COURT: "I got you. So he's already been to prison once on a burglary, right, back in '03?"

STATE: "Yes. Also, he's been to TJJD [Texas Juvenile Justice Department] as a juvenile for aggravated assault with a deadly weapon, so I don't think probation is appropriate."

THE COURT: "I don't, either. I don't know what they're thinking."

Appellant argues that this shows, "before any evidence had been heard on the issue of punishment, that the trial judge had already foreclosed consideration of [probation]." We disagree.

"A trial judge is given wide latitude to determine the appropriate sentence in a given case." *Tapia v. State*, 462 S.W.3d 29, 46 (Tex. Crim. App. 2015); *see Barrow v. State*, 207 S.W.3d 377, 381 (Tex. Crim. App. 2006) ("The discretionary assessment of punishment within legislatively prescribed boundaries has long been ingrained and accepted in American jurisprudence."); *see also United States v. Booker*, 543 U.S. 220, 233 (2005) (recognizing "the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range"); *Apprendi v. New Jersey*, 530 U.S. 466, 481 (2000) (noting historic authority "for judges

18

to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment within the range prescribed by statute"). However, despite a judge's wide discretion in determining the proper punishment, "[d]ue process requires a neutral and detached hearing body or officer." *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)); *see Villareal v. State*, 348 S.W.3d 365, 372 (Tex. App.—Austin 2011, pet. ref'd) (observing that right to due process guarantees right to fair trial in fair tribunal). A trial court denies a defendant due process during the punishment phase if the court arbitrarily refuses to consider the entire range of punishment or any mitigating evidence and imposes a predetermined sentence. *Ex parte Brown*, 158 S.W.3d 449, 456 (Tex. Crim. App. 2005) ("[A] trial court's arbitrary refusal to consider the entire range of punishment in a particular case violates due process."); *see Gagnon*, 411 U.S. at 786–87; *see also Grado v. State*, 445 S.W.3d 736, 741 (Tex. Crim. App. 2014) ("The unfettered right to be sentenced by a sentencing judge who properly considers the entire range of punishment is a substantive right necessary to effectuate the proper functioning of our criminal justice system."). Absent a clear showing of bias, a trial court's actions will be presumed to have been correct. *Brumit*, 206 S.W.3d at 645; *see Tapia*, 462 S.W.3d at 44.

Here, our review of the record does not support a conclusion that the trial court failed to consider the full range of punishment. It was evident from the record that the judge had both ordered and reviewed the PSI prior to the sentencing hearing. Despite the judge's comment, the defense reiterated that it would be asking for probation, and the State offered extensive argument that such a sentence, in its view, would be inappropriate. Moreover, the judge sua sponte requested to hear from a probation officer and engaged in an extensive colloquy about potential treatment options:

19

THE COURT: "I'd like to hear from one of the probation officers about why they are saying day treatment center, instead of some other longer -- well, let's see. Who is the probation officer here that's ready to come on up and talk about this? . . . Why is it day treatment, instead of something like intermediate sanction facility? Were you in on the staffing?

PROBATION OFFICER: No, Your Honor.

THE COURT: "Well, just tell me what would he be eligible for, having a violent history."

PROBATION OFFICER: "In looking at his criminal history, the only treatment that would take him at this time would be day treatment program or SAFPF [Substance Abuse Felony Punishment Facility]."

THE COURT: "So ISF [Intermediate Sanction Facility] would not take him?"

PROBATION OFFICER: "They could possibly take him. However, the substance abuse treatment that's offered through the ISF is minimal. Even though there is a substance abuse track, it's minimal treatment."

THE COURT: "You think day treatment would be better?"

PROBATION OFFICER: "Yes, Your Honor."

THE COURT: "Actually -- but he can't go there because of his violent history."

PROBATION OFFICER: "That's correct."

The judge gave both sides equal time, and both were permitted to present and cross-examine witnesses, offer evidence, and make opening and closing statements. The judge listened to testimony from appellant's mother as to appellant's character and community ties. Ultimately, the trial court entertained probation as a possible punishment and considered evidence when imposing its sentence. "[T]here is explicit evidence from the hearing . . . that the trial court considered the full range of punishment in assessing the sentence." *Brumit*, 206 S.W.3d at 645.

We cannot conclude that the record establishes an arbitrary refusal on the part of the trial court to consider the entire range of punishment. Nor has appellant overcome the

presumption that the trial court was neutral and detached and its actions correct.  We overrule appellant's second issue.

## CONCLUSION

Having overruled both of appellant's issues, we affirm the trial court's judgments of conviction.

_____

Edward Smith, Justice

Before Justices Goodwin, Kelly, and Smith

Affirmed

Filed:   June 25, 2021

Do Not Publish