

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-23-00288-CR

———————————————————

DAVID ANTHONY TRIPOLONE, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 371st District Court
Tarrant County, Texas
Trial Court No. 1606038

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

In June 2020, Appellant David Anthony Tripolone pleaded guilty to indecency with a child by contact in exchange for seven years' deferred-adjudication community supervision, a fine, the State's waiving a second indecency-with-a-child count, and other conditions. One of the community-supervision conditions required Tripolone to complete a Sex Offender Treatment Program (SOTP).

Just over three years later, the State petitioned to proceed to adjudication, alleging in two separate paragraphs that Tripolone had "failed to successfully complete the [SOTP] and was discharged on or about" December 15, 2021, and July 7, 2023, respectively. The State waived Paragraph One, and Tripolone pleaded true to Paragraph Two. Despite the State's having waived Paragraph One, the trial court found in its written judgment that Tripolone had violated his community-supervision conditions as set out in both paragraphs, adjudicated him guilty, and sentenced him to 15 years' confinement.

On appeal, Tripolone raises two points: (1) the trial court abused its discretion by adjudicating him guilty because the State neither alleged nor proved a probation violation and because he did not intentionally violate any of his probation conditions and (2) the trial court erroneously signed a judgment finding that he had violated his probation conditions as set out in both paragraphs of the State's petition. Although the trial court did not abuse its discretion by adjudicating Tripolone guilty, it did err by finding that he had violated his community-supervision conditions as set out in

2

Paragraph One of the State's petition. We will thus modify the judgment to remove the erroneous finding and affirm the judgment as modified.

## I. Background

Tripolone's community-supervision conditions required him to complete an SOTP:

> Complete all requirements of a sex[-]offender treatment evaluation within sixty days as directed by the supervision officer. Attend and participate fully in and successfully complete psychological counseling, treatment, and aftercare sessions for sex offenders with an individual or organization as specified by or approved by the [c]ourt or the supervision officer. Pay all costs of evaluation, counseling, treatment[,] and aftercare. Treatment must be completed within three years of its initiation, with at least one-third of treatment completed each year.

On July 13, 2023, the State petitioned to proceed to adjudication, alleging in two paragraphs that Tripolone had violated his community-supervision terms and conditions as follows: (1) Tripolone "failed to successfully complete the [SOTP] and was discharged on or about December 15, 2021," and (2) Tripolone "failed to successfully complete the [SOTP] and was discharged on or about July 7, 2023."

At the start of the October 11, 2023 hearing on the State's adjudication petition, the State waived Paragraph One of its petition. Tripolone pleaded true to Paragraph Two, and the trial court found that allegation to be true. The trial court then heard testimony from Tripolone; Tripolone's wife; and Sean Braun, one of Tripolone's treatment providers.

Tripolone admitted that he had not successfully completed an SOTP and was discharged from an SOTP on July 7, 2023. He testified that he understood that successfully completing an SOTP was one of his community-supervision conditions and that pleading true to violating one of those conditions could result in incarceration.

Tripolone explained that he had started an SOTP at Dr. Strain & Associates. Sometime during Tripolone's treatment there, Dr. Strain suggested that he find another SOTP. Tripolone agreed and voluntarily left the program in December 2021. Tripolone testified that he began another SOTP with Psychotherapy Services & Yokefellows (PSY) in January 2022. From mid-January 2022 through mid-June 2023, Tripolone attended weekly group sessions at PSY. Around August 2022, Tripolone was diagnosed with autism, anxiety, and depression.

Tripolone had four different treatment providers while at PSY. Eventually, Tripolone was treated by Braun, PSY's Clinical Director. Braun explained that it was unusual for an individual to have four treatment providers but explained that PSY was trying to help Tripolone succeed and hoped that different treatment approaches and treatment groups would "help him to make progress and [to] be open and honest about his behaviors." Braun also testified to a different treatment timeline than Tripolone. According to Braun, Tripolone had "attended treatment with our office for about two and a half years" and had worked with different providers at PSY "anywhere from six to eight months each."

Tripolone and Braun did not get along. Tripolone complained that he felt that Braun had attacked and antagonized him during treatment sessions and had used profane or sexual language that was directed toward him. Tripolone further complained that Braun had encouraged Tripolone's fellow treatment-group members to "join [in] the conversation to attack [him]."

Tripolone also claimed that after he provided his "autism report" to Braun in April or May 2023, he felt that Braun started treating him differently because of his autism diagnosis and began requiring him to redo or elaborate more on his homework. Tripolone also felt that Braun was not reviewing his homework thoroughly. According to Tripolone, when he discussed his anxiety and depression diagnoses with Braun, Braun was dismissive, declaring that Tripolone was no different than anybody else and that "everybody would be on the mental health caseload if that[ was] the case."

Braun admitted that his communication style during sessions was assertive and that if he felt that a person was not being truthful, he might "push a little bit more." Braun testified that when he learned of Tripolone's autism diagnosis, he made accommodations based on that diagnosis and based on the recommendations of the clinical psychologist who had diagnosed Tripolone. But Tripolone resisted Braun's accommodation attempts.

According to Braun, Tripolone failed to comply with treatment because "[h]e was resistant to any interventions that any of the clinicians provided." Although it was

5

not uncommon for a person to deny culpability when starting treatment, Tripolone's honesty was a continuing issue because he "repeatedly changed his story regarding the offense for which he had [pleaded] guilty to." Braun opined that based on Tripolone's ongoing resistance to treatment, he was at a moderate to high risk to reoffend.

During what ended up being Tripolone's last session at PSY, Braun told him that because he was not making progress, PSY was going to have a staffing with Braun, another experienced clinician at PSY, Tripolone's probation officer, and any family members who wanted to attend. Braun and Tripolone then started talking about the positive things that Tripolone had going on in his life. During this discussion, Tripolone sarcastically said, "I don't remember all the dumb shit that you tell me." Because of that comment, Braun responded, "You know, if you're not going to take advantage of this opportunity, then I'm just going to refer you back to your [probation officer], and I'm going to unsuccessfully discharge you from treatment." PSY discharged Tripolone from SOTP on July 7, 2023.

Tripolone recalled that during his last session with Braun, Braun had confronted him about an assignment that he had completed several months earlier with a different PSY provider and wanted Tripolone to redo the assignment. Tripolone claimed that his outburst with Braun during that session was in response to Braun's using profane language and taunting him. Tripolone acknowledged that Braun had informed him that one of the reasons that he was discharged from PSY was because he had not taken responsibility for his sexual offense.

Tripolone understood that admitting to the offense is one of the most important parts of sex-offender treatment. He confessed that he had denied committing the offense during some of his treatment sessions. He admitted during the revocation hearing that he had committed the offense and explained that he had trouble making that admission to his providers at PSY because he was unmedicated at the time.

Tripolone testified that he started taking medication for autism in August 2023, the month after his discharge from PSY. According to Tripolone, his autism causes him "to take things very literal[ly]," and he was unable to react or respond appropriately to Braun because he was not medicated then. He explained that with medication, he can focus and can think, speak, and function properly. Tripolone's wife confirmed the medication's positive effects: Tripolone was calmer, better able to make decisions, and more intuitive about what people actually mean "when they say whatever they say."

Tripolone testified that he would have continued treatment at PSY if Braun had not unsuccessfully discharged him. Tripolone stated that he intended to complete an SOTP and asked the trial court to allow him to participate in an SOTP with a provider experienced in dealing with autism. But even if Tripolone had to attend sessions with Braun, Tripolone believed that "things would be different[ ]" because he was medicated.

At the hearing's conclusion, the trial court adjudicated Tripolone guilty of indecency with a child by sexual contact and sentenced him to 15 years' incarceration. Tripolone timely appealed and has raised two points.

## II. Adjudication of Tripolone's Guilt

In his first point, Tripolone contends that the trial court abused its discretion by adjudicating him guilty because the State failed to plead or prove that he violated a condition of his community supervision.

We review a trial court's decision to adjudicate guilt with the same standard we use to review a trial court's decision to revoke community supervision. *See* Tex. Code Crim. Proc. Ann. art. 42A.108(b). In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated at least one of the terms and conditions of community supervision. *Bryant v. State*, 391 S.W.3d 86, 93 (Tex. Crim. App. 2012); *Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006). The trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's ruling. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). If the State fails to meet its burden of proof, the trial court abuses its discretion by revoking the community supervision. *Cardona*, 665 S.W.2d at 493–94.

Here, Tripolone argues that the trial court abused its discretion for two reasons. First, he contends that the State neither pleaded nor proved a probation violation

because the State failed to allege and prove that he did not complete an SOTP within three years of beginning treatment at PSY. Second, he asserts that he did not intentionally violate any of his probation conditions. We address each of these arguments in turn.

Here, as noted, Tripolone's probation conditions required him to "[a]ttend and participate fully in and successfully complete" an SOTP and stated that "[t]reatment must be completed within three years of its initiation, with at least one-third of treatment completed each year." Tripolone argues that because the State failed to allege in its revocation petition that he did not complete an SOTP within three years of beginning treatment at PSY, the State failed to allege that he had violated a probation condition.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). Further, the party must obtain an express or implicit adverse trial-court ruling or object to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App. 2020). Deficiencies in a revocation petition must be raised at or before trial, and failure to object at that time forfeits any appellate complaint about sufficiency of the notice provided by the motion. *Armstrong v. State*, No. 02-13-00243-CR, 2014 WL 1324423, at *2 (Tex. App.—Fort Worth Apr. 3, 2014, no pet.) (per

9

curiam) (mem. op., not designated for publication); *see Labelle v. State*, 692 S.W.2d 102, 105 n.2 (Tex. Crim. App. 1985) (stating that a long line of cases holds that the allegations in a revocation motion do not require the same particularity as that required of an indictment or information; rather, "the motion to revoke must simply give fair notice of the violation involved in order to comport with minimum due process"); *Hunt v. State*, 5 S.W.3d 833, 835 (Tex. App.—Amarillo 1999, pet. ref'd) (holding that complaints about deficiencies in revocation motions were forfeited when appellant failed to raise them at or before trial); *see also Moores v. State*, Nos. 05-10-01270-CR, 05-10-01271-CR, 2012 WL 556184, at *5 (Tex. App.—Dallas Feb. 22, 2012, no pet.) (mem. op., not designated for publication) (stating that any error by the State in failing to allege an "on or about" date in revocation motion was harmless because the revocation-hearing record reflected that appellant knew what he was required to defend against and that his contacts with the complainant that the State proved and relied upon to revoke his probation occurred within the term of his probation); *Pierce v. State*, 113 S.W.3d 431, 439 (Tex. App.—Texarkana 2003, pet. ref'd) (stating that a variance is material only if it operates to the defendant's surprise or prejudices his rights). Because Tripolone did not raise his complaint about the State's failing to allege that he did not complete an SOTP within three years of beginning treatment at PSY, he has failed to preserve this complaint for our review, and we overrule it. *See* Tex. R. App. P. 33.1(a)(1).

Next, Tripolone argues that the State did not prove that he had failed to successfully complete an SOTP within three years of starting treatment. As Tripolone acknowledges, a plea of "true," standing alone, suffices to support revoking community supervision. *Tapia v. State*, 462 S.W.3d 29, 31 n.2 (Tex. Crim. App. 2015). But, Tripolone argues, "[t]his case presents the rarest of exceptions to this rule" because the conduct the State alleged and to which he pleaded true did not amount to a violation of his probation conditions.

We addressed a similar argument in *Ward v. State*, No. 02-10-00068-CR, 2010 WL 5186783 (Tex. App.—Fort Worth Dec. 23, 2010, no pet.) (mem. op., not designated for publication). In that case, Condition No. 28 of Ward's community supervision required him to "[s]uccessfully complete the Sex Offender Program within 3 years of it[ ]s initiation." *Id.* at *1. The State had alleged in its revocation petition that "[Ward] had 'failed to successfully complete the Sex Offender Program within three years of its initiation' and that he 'was unsuccessfully discharged from treatment on September 01, 2009.'" *Id.* At the revocation hearing, Ward's counselor testified that Ward had admitted to having had contact with children but had refused to take suggestions about how to avoid those contacts. *Id.* at *2. The counselor further testified that Ward was not progressing in his treatment and was so disruptive to other group members during treatment sessions that Ward was attending individual sessions toward the end of his treatment. *Id.* The counselor decided to unsuccessfully discharge Ward from the program after discussions with Ward's probation officer,

11

who also testified that Ward had continually violated his probation by coming into contact with children. *Id.* at *1–2.

Ward contended that the trial court abused its discretion by revoking his community supervision and by adjudicating him guilty because the State failed to establish that he had failed to successfully complete an SOTP within three years of its inception. *Id.* at *1. We rejected this contention, reasoning that

> Appellant's arguments that the trial court had to find that three years had elapsed since the sex[-]offender treatment began in order to conclude that he violated his community supervision and that involuntary dismissal based on failure to progress does not amount to a failure to successfully complete the program are faulty. Condition No. 28 required successful completion of the three-year program. Successful completion would necessarily require more than three years of robotic attendance; it would require improvement. According to the evidence, Appellant did not progress but regressed. Appellant therefore did not successfully complete the program as required by Condition No. 28. Applying the appropriate standard of review, we hold that the trial court did not abuse its discretion by revoking Appellant's community supervision for violating Condition No. 28.

*Id.* at *2 (footnote omitted).

Here, Tripolone's community-supervision conditions required him to "[a]ttend and participate fully in and successfully complete" an SOTP. The evidence showed that Tripolone was placed on deferred-adjudication community supervision in June 2020. According to Tripolone, he left an SOTP with Dr. Strain in December 2021, and he started another SOTP with PSY in January 2022. After a year and a half of treatment—or two-and-half years, according to Braun—Tripolone was not making progress in his treatment at PSY. He was unsuccessfully discharged from PSY in July

12

2023 because, according to Braun, Tripolone had refused to take responsibility for or be honest about his sexual offense and had continually resisted treatment even after PSY made accommodations for his autism. Although Tripolone testified that he would behave differently in treatment while on medication, he had initially refused to take medication after his diagnosis and waited until after his discharge from PSY to begin taking that medication. And according to Braun, "medication would not have any impact on [Tripolone's] ability or willingness to be honest."

As we noted in *Ward*, "[s]uccessful completion would necessarily require more than three years of robotic attendance; it would require improvement." *Id.* According to the evidence here, since the trial court placed Tripolone on deferred-adjudication community supervision in June 2020, he had been in two SOTPs—first with Dr. Strain and then with PSY—and after at least 18 months with PSY, he showed no improvement and was thus discharged in July 2023 without completing the program. Viewing the evidence in the light most favorable to the trial court's ruling, we conclude that the State proved by a preponderance of the evidence that Tripolone violated a community-supervision condition by failing to "[a]ttend and participate fully in and successfully complete" an SOTP within three years of initiating treatment.

Lastly, Tripolone argues that he did not intentionally violate any of his probation conditions. He contends that he had worked diligently to complete his SOTP while being treated at PSY, but his autism, lack of medication, and conflicts with Braun led to his involuntary discharge from the program. Tripolone

13

acknowledges that generally, unless the issue is the nonpayment of fees, the State is not required to prove that the defendant voluntarily or intentionally violated a community-supervision condition when that condition does not specify a *mens rea* requirement. *See Cessac v. State*, No. 13-17-00640-CR, 2018 WL 3583744, at *2 (Tex. App.—Corpus Christi–Edinburg July 26, 2018, no pet.) (mem. op., not designated for publication) ("Generally, unless the issue in question is nonpayment of restitution or other supervisory fees, the State has no duty to prove voluntary or intentional conduct when the terms of the community supervision do not specify a [*mens rea*]."); *Smith v. State*, No. 06-12-00065-CR, 2013 WL 238883, at *3 (Tex. App.—Texarkana Jan. 23, 2013, no pet.) (mem. op., not designated for publication) (noting that the State has no duty to prove intentional conduct where no *mens rea* is specified in community-supervision condition); *see, e.g.*, *Hardy v. State*, No. 08-21-00074-CR, 2022 WL 1210576, at *2 (Tex. App.—El Paso Apr. 25, 2022, no pet.) (not designated for publication) (concluding that the State was not required to prove that appellant knowingly possessed or transported a handgun because "the language of the community supervision term [did] not specify a *mens rea* standard; it simply prohibit[ed] possession and transport of a firearm and ammunition"); *Cano v. State*, No. 01-00-01210-CR, 2001 WL 1098023, at *1 (Tex. App.—Houston [1st Dist.] Sept. 20, 2001, no pet.) (not designated for publication) ("The State had no duty to prove voluntary or intentional conduct here because the State sought to revoke appellant's community supervision for failure to report, not for failure to make required payments."). Because the State

14

did not have to prove an intentional failure to complete an SOTP, its burden was only to show, by a preponderance of the evidence, that Tripolone had failed to complete an SOTP. As we have already determined that the State met this burden, we conclude that the trial court did not abuse its discretion by revoking Tripolone's community supervision and adjudicating him guilty. We thus overrule Tripolone's first point.

## III. Judgment Modification

In his second point, Tripolone argues that the trial court incorrectly found in its written judgment that he had pleaded "true" to the allegation in Paragraph One of the State's adjudication petition. Tripolone asks us to modify the judgment to correctly reflect that the trial court found that he had violated only Paragraph Two. The State agrees that the judgment is incorrect and that the judgment should be modified.

Here, the record shows that at the adjudication hearing, the State waived Paragraph One, Tripolone pleaded true to Paragraph Two only, and the trial court found only the allegations in Paragraph Two to be true. Nevertheless, in its written judgment, the trial court found as follows: "While on deferred[-]adjudication community supervision, Defendant violated the conditions of community supervision, as set out in the State's Original Motion to Adjudicate Guilt, as follows: PARAGRAPH(S) ONE AND TWO."

We may modify a judgment "to make the record speak the truth." *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *see* Tex. R. App. P. 43.2(b). Here, the record reflects that the trial court found only the allegations in Paragraph Two to

15

be true. We thus sustain Tripolone's second point and will modify the judgment accordingly.

## IV. Conclusion

Having sustained Tripolone's second point, we modify the judgment to delete and replace "PARAGRAPH(S) ONE AND TWO" in the trial court's findings with "PARAGRAPH TWO." Having overruled Tripolone's first point, we affirm the judgment as modified. *See* Tex. R. App. P. 43.2(b).

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  August 1, 2024