# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00273-CR

**Joshua Derek Jaquez, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 51ST DISTRICT COURT OF TOM GREEN COUNTY
### NO. A-19-0534-SB, THE HONORABLE CARMEN DUSEK, JUDGE PRESIDING

---

## O P I N I O N

Appellant Joshua Derek Jaquez pleaded guilty to murder. *See* Tex. Penal Code § 19.02. In two issues, he challenges the trial court's assessment of punishment at twenty-five years' confinement. *Id.* §§ 12.32 (establishing sentencing range for first-degree felony offenses at "any term of not more than 99 years or less than 5 years"), 19.02(c) (establishing offense of murder as first-degree felony). Specifically, he challenges the legal sufficiency of the punishment decision and contends that his trial counsel provided ineffective assistance of counsel by not filing a motion to recuse the trial judge. We affirm the trial court's judgment of conviction.

## BACKGROUND

At trial, Jaquez pled guilty to murder, and the state agreed to a 25-year cap on punishment. Both the State and Jaquez agreed that Jaquez's involvement in the murder was under a theory of party liability, and as a result the trial court would be authorized to consider

whether Jaquez was eligible for deferred adjudication community supervision. *See* Tex. Code Crim. Proc. art. 42A.102(b)(4) (authorizing deferred adjudication community supervision under limited circumstances including when the defendant did not anticipate that a human life would be taken). The trial court deferred the finding of guilt, and the case proceeded to a punishment hearing.

Detective Thomas Gibson testified that while he was a patrol officer, he and Officer John Southall answered a call regarding a shooting victim, Kristian Rose. The officers were directed by Rose's mother, to a small building in the backyard of the house. Rose was on the floor still breathing but unable to communicate. Officer Southall attempted first aid, but Rose died at the scene. Video and audio from Detective Gibson's police-car camera and crime scene photos taken by Detective Gibson were admitted into evidence.

Detective Lynn Dye testified that he was assigned to the homicide case and arrived on the scene about an hour after Detective Gibson. Detective Dye testified that an autopsy done on Rose's body determined the cause of death to be a "gunshot wound to the chest." Based on surveillance footage from a local gas station and information obtained about the location of Rose's stolen dog, detectives had four suspects; Jaquez and his three codefendants, Brian Garcia, Jacob Martinez, and Alexis Jackson. The detectives also identified a four-door, black sedan as the car used by the suspects.

Detectives interviewed a witness who observed the four suspects in possession of Rose's dog soon after the offense was committed. After the witness gave a statement to the detectives, Garcia and Martinez attempted to forcibly enter his residence. When police arrived at the witness's residence, they located Garcia and Martinez sitting in the same four-door, black sedan that had been identified as being involved in the murder and arrested them for committing

2

an offense against the witness. Detectives later interviewed Jackson, who stated that on the night of the murder, Jaquez drove the four-door, black sedan. Jaquez was arrested and gave two statements to police. A video and audio recording of the initial interview and the audio of a follow-up interview were admitted at trial.

In the initial interview, Jaquez told Detective Dye that on the night of the murder, he and Garcia were hanging out together. At some point Martinez and Jackson joined them. Garcia and Martinez wanted to commit a robbery. Jackson told them they could rob Rose because she wanted revenge against him for pointing a gun at her the night before. Jaquez told Detective Dye that he thought it was only going to be a robbery and home invasion and that he would not have gone if he thought someone would be killed. He stated that he only went because the others were too "messed up" on drugs to drive. However, he also stated that he did not drive to Rose's residence but only away from it. Jaquez also stated that Garcia stopped on the way and bought gloves, that the three robbers went in dressed in all black with guns that Jaquez described as "military weapons," that Jackson had a taser with her, and that Garcia and Martinez wore ski masks, but Jackson did not because she wanted Rose to know it was her. He said that although there was not a plan to kill Rose, Jaquez knew Jackson "was looking for more than robbing him." When asked if Jackson had the means to kill somebody that night, Jaquez answered, "By the look of it, yeah. . . . She had a taser . . . they had guns." Jaquez told Detective Dye that he heard ambulances and then his three codefendants got back in the car with Rose's dog, and Jaquez drove them away from the scene. Jaquez stated that he did not know Rose was dead until later. Jaquez admitted that when he was pulled over by police after the offense, he had denied he was involved. Jaquez told Detective Dye that he did not know where the guns or the clothes that his codefendants were wearing were located.

3

During the follow-up interview with Detective Dye, Jaquez admitted that the night of the shooting, he heard a woman that he believes was Rose's mother, screaming for help and that he drove from the crime scene to Martinez's father's house, where Garcia and Martinez gave Martinez's father their two guns and Jackson changed clothes.

At trial, the State asked Detective Dye whether it was reasonable based on his experience, "to anticipate that someone could be killed when you go to rob somebody with guns and masks and break into their house," to which he responded, "[t]hat is a possible outcome, yes." On cross-examination, Detective Dye agreed that Jaquez's cooperation in the investigation led to the arrests and convictions of his three codefendants for the offense of murder, and that Jaquez had testified against Jackson at her trial.

Jaquez testified during his case in chief about his difficult childhood and about how he started self-medicating with drugs and alcohol in the sixth grade. Garcia was a long-time friend from high school who regularly let Jaquez sleep in Garcia's car when Jaquez was homeless as a teenager. Jaquez testified that he had been "clean" and sober for two years before relapsing around the time of the incident when Garcia had gotten out of jail and he started hanging out with Garcia again. Jaquez admitted during cross-examination that he was high the night of the incident, that he saw his co-defendants get out of the car at Rose's house with weapons, and that he heard a woman scream for help before his three co-defendants ran back to the car and he drove them away with Rose's stolen dog. He also admitted that he never got out of the car to help Rose or the woman and he never called 911 or reported what happened until he was arrested. Jaquez presented two character witnesses—his current romantic partner and a former romantic partner—who testified on his behalf in support of Jaquez being placed on community supervision.

4

After hearing all the evidence, the trial court found Jaquez guilty and assessed punishment at twenty-five years' confinement. In explaining her decision not to grant the defendant's request for community supervision, the trial court explained that "[t]he totality of the facts and circumstances make it not credible to the Court that the defendant did not anticipate a life would be taken," and noted that the offense could have been indicted as capital murder and that Jaquez got a better deal than his codefendants in exchange for his cooperation.

Jaquez filed a motion for new trial raising ineffective assistance of trial counsel. In support of his motion, he attached an affidavit from his trial counsel in which she stated that there was no reasonable trial strategy for failing to file a motion to recuse the trial judge upon learning that the trial judge had presided over a separate criminal case a week prior to Jaquez's trial that involved the death of Jaquez's uncle. After a hearing on the motion, the trial court denied it. Jaquez appealed.

## PUNISHMENT DECISION

In his first issue, Jaquez contends that the trial court's finding that he was ineligible for community supervision was based on legally insufficient evidence.

A person convicted of murder is ineligible for placement on community supervision "except that the judge may grant deferred adjudication community supervision on determining that the defendant did not cause the death of the deceased, did not intend to kill the deceased or another, and did not anticipate that a human life would be taken." Tex. Code Crim. Proc. art. 42A.102(b)(4). We review a trial court's sentencing decision for abuse of discretion. *Tapia v. State*, 462 S.W.3d 29, 46 (Tex. Crim. App. 2015). Generally, "the sentencer's discretion to impose any punishment within the prescribed range [is] essentially 'unfettered'"

5

except for "a few specific instances where the range of punishment depends upon the determination of discrete facts." *Ex parte Chavez*, 213 S.W.3d 320, 323 (Tex. Crim. App. 2006). Indeed, "a punishment that falls within the legislatively prescribed range, and that is based upon the sentencer's informed normative judgment, is unassailable on appeal." *Id.* at 324; *see also Nunez v. State*, 565 S.W.2d 536, 538 (Tex. Crim. App. 1978) (explaining that "a penalty imposed within that range prescribed by the legislature will not be disturbed on appeal").

Jaquez contends that the plain language of Article 42A.102(b)(4) creates a two-prong approach that requires the trial court to first correctly determine the three factors that would allow a consideration of deferred adjudication community supervision, and then gives the trial court discretion to impose any sentence within the statutory range. He reasons that while the second prong is not subject to sufficiency review on appeal, the first is. He asks that we reverse the sentence based on insufficient evidence showing that he anticipated a human life would be taken, and remand for the trial court to reassess sentencing with the consideration of community supervision included. Jaquez contends that there was no evidence presented that he anticipated there would be a loss of life. Jaquez relies on *Chavez*, for support that his case falls within an exception to the general rule that forecloses legal sufficiency review of punishment decisions. *See*, 213 S.W.3d at 323–24. Specifically, he directs us to the Court of Criminal Appeals explanation that "the task of setting a particular length of confinement within the prescribed range of punishment is essentially a 'normative' judgment…*[a]side from a few specific instances where the range of punishment depends upon the determination of discrete facts*," *id.* at 323 (emphasis added), and contends that his case falls within such "specific instances."

6

We disagree. The plain reading of Article 42A.102(b)(4) allows a trial judge to consider deferred adjudication community supervision in cases such as this, if the trial court makes three specific findings. Tex. Code Crim. Proc. art. 42A.102(b)(4). However, nothing in the statute requires the trial court to grant deferred adjudication community supervision even if the three factual prerequisites exist. Further, *Chavez* did not create an exception for an abuse of discretion review, but rather acknowledged that there could be cases in which the punishment decision was so "intrinsically factbound" that the general rule that a punishment "is unassailable on appeal" if it falls within the legislatively prescribed range did not apply. *See Chavez*, 213 S.W.3d at 323–24 (noting that generally, punishment falling within legislatively prescribed range and based on sentencer's informed normative judgment "is unassailable on appeal"). We cannot conclude that either the discretionary language in Article 42A.102 or the relied-on *Chavez* reasoning requires us to conduct a legal sufficiency review of the trial court's punishment decision in this case.[1]

On this record, we cannot conclude that the trial court abused it discretion in sentencing Jaquez to twenty-five years' confinement. The sentence is within the statutory range, *see* Tex. Penal Code §§ 12.32, 19.02(c); *Nunez*, 565 S.W.2d at 538, and we cannot conclude that the trial "judge has clearly abused her discretion," *see Tapia*, 462 S.W.3d at 46. Specifically, the twenty-five-year sentence was within the range recommended through the plea agreement.

---

[1] Our sister court has adopted the same approach in a case that presented a similar issue. *See Ibarra v. State*, No. 06-21-00013-CR, 2021 WL 4095255, at *2 n. 5 (Tex. App.—Texarkana Sept. 9, 2021, pet. ref'd) (mem. op., not designated for publication) ("Because the trial court's punishment assessment was within the range of punishment, we do not conduct any sufficiency review on the trial court's decision to reject deferred adjudication community supervision."); *see also Rhymes v. State*, 536 S.W.3d 85, 99 n.9 (Tex. App.—Texarkana 2017, pet. ref'd) (noting that "[a]lthough unpublished opinions have no precedential value, we may take guidance from them 'as an aid in developing reasoning that may be employed'" (quoting *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd)).

Although there was conflicting evidence regarding whether Jaquez anticipated the loss of human life, there was evidence presented that supports the trial court's credibility determination that informed its decision to not grant community supervision. Specifically, during his first interview with Detective Dye, Jaquez stated that Jackson was looking for revenge and "more than robbing" Rose and that all three codefendants went to Rose's home with "military weapons" with the intent of committing robbery and a home invasion. Jaquez also answered affirmatively when asked by Detective Dye if Jackson had the means to kill someone that night. At trial, Jaquez admitted that he saw his co-defendants get out of the car at Rose's house with weapons, that he heard a woman scream for help but never got out of the car to help Rose or the woman and instead drove away with Rose's stolen dog in the car, and that he never called 911 or reported what happened until he was arrested. Further, Detective Dye testified that someone getting killed under these circumstances is a possibility. On this record, we cannot conclude that the trial court abused its discretion. *See id.* We overrule Jaquez's first issue.

## ASSISTANCE OF TRIAL COUNSEL

In his second issue on appeal, Jaquez contends that his trial counsel provided ineffective assistance when she failed to pursue a motion to recuse or disqualify the presiding trial judge after learning the judge had presided over a different case in which Jaquez's uncle was the deceased victim. Specifically, he contends that in the separate case, the defense strategy was to present negative testimony about Jaquez's family to show that Jaquez's uncle was the aggressor in the deadly fight that was the subject of that case. The specific examples of negative testimony elicited in the separate case are that Jaquez's other uncle testified that he did not report who his brother's attacker was because he planned to "take matters into [his] own hands" and

8

that the court had to have ten uniformed sheriff's deputies in the courtroom for everyone's safety due to seventeen members of Jaquez's family attending the trial.

To prevail on his claim of ineffective assistance of counsel, Jaquez must prove by a preponderance of the evidence that: (1) his counsel's performance was deficient, and (2) the deficiency prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 772–74 (Tex. Crim. App. 1999). The review of a trial counsel's representation on an ineffective-assistance challenge is highly deferential to counsel's professional judgment. *Strickland*, 466 U.S. at 689.

To meet the first prong of the *Strickland* test, Jaquez must overcome a strong presumption that his counsel's conduct falls within the wide range of reasonably professional assistance. *Id.* "[A]ny allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). To meet the second prong of the test, appellant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Id.*

In her affidavit attached to Jaquez's motion for new trial, trial counsel stated:

> 4. Before starting the sentencing hearing, I learned that the same court presided over a murder trial the week prior, where the decedent was my client's uncle. Even though I had that information, I did not do anything at that time.
>
> 5. After sentencing, I suddenly realized I made a grave error in judgment. In my experience as a defense attorney, testimony about the victim is often elicited by defense counsel in efforts to mitigate punishment or obtain a favorable outcome.

9

Testimony related to my client's family heard by the same judge the week prior likely had a substantial impact on the sentencing.

6. A reasonable attorney should have asked for a continuance, obtained a copy of the trial transcript from the uncle's trial, reviewed it to confirm prejudicial testimony occurred, and then filed a motion to recuse the judge based on the prejudicial information learned the week prior[.]

7. There is no reasonable trial strategy for me failing to do as much. This resulted in prejudice to my client, and being dedicated to pursuit of justice, I am compelled to admit to as much.

8. I believe that my inaction undermined the confidence in the outcome of Joshua Derek Jaquez's sentencing hearing and resulting judgment and conviction.

Although trial counsel thought Jaquez was prejudiced by the lack of a motion to recuse the trial judge after the trial judge assessed the maximum sentence under the plea agreement, the record does not support that trial counsel was deficient. Specifically, trial counsel "is not required to engage in the filing of futile motions," and trial counsel is not considered deficient when she does not file a motion that is not supported by the evidence. *See Mooney v. State,* 817 S.W.2d 693, 698 (Tex. Crim. App. 1991) (reasoning that trial counsel "were not deficient for failing to move to quash the panel because there is no evidence that the venire, as a whole, was biased against" defendant). Here, the record does not support that recusal of the trial judge was warranted.

Jaquez contends that the trial judge should have been recused under Texas Rule of Civil Procedure 18b. *See Arnold v. State*, 853 S.W.2d 543, 544 (Tex. Crim. App. 1993) (holding that Rule 18a, which references Rule 18b, applies to criminal cases). Rule 18b requires, in relevant part, that a judge shall recuse herself in any proceeding in which her impartiality might reasonably be questioned or she has a personal bias or prejudice concerning the subject matter or

a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. Tex. R. Civ. Proc. 18b(b)(1), (2). "A party seeking recusal must satisfy a 'high threshold' before a judge must be recused." *Ex parte Ellis*, 275 S.W.3d 109, 116 (Tex. App—Austin 2008, no pet.) (citing *Liteky v. United States*, 510 U.S. 540, 558 (1994) (Kennedy, J., concurring)). In determining whether recusal is necessary, "'the proper inquiry is whether a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge and the case, would have a reasonable doubt that the judge is actually impartial.'" *Id.* There is a "presumption of judicial impartiality." *Id.* at 117. In the recusal context, partiality, bias, and prejudice is more than mere favoritism. *Id.* Rather, recusal is required "only when a judge displays an 'attitude or state of mind so resistant to fair and dispassionate inquiry'" as to cause a reasonable member of the public to question the objective nature of the judge's rulings." *Id.* The movant of a motion to recuse the trial judge bears the burden of proving recusal is warranted by providing facts demonstrating the presence of bias or partiality "of such a nature and extent as to deny the movant due process of law." *Id.*

Here, the trial judge explained her decision to deny Jaquez's motion for new trial. In relevant part, she stated:

> [W]hile the motion is couched in terms of ineffective assistance by [trial counsel], at the heart of the matter is a fundamental argument that the Court would not have been able to be fair and cannot set aside what's heard in one case from what is to be considered in another case.

> . . . .

> The trier of fact must always follow the law regarding evidence, and the instructions that are given to a jury during a trial are in fact no different than the obligation that is placed upon the judge as a trier of fact; and I, as the judge in this court, believe very strongly in those fundamental principles, and those are that the evidence in a case consists only of the testimony and the exhibits admitted in trial.

Only evidence from the case may be considered to reach a decision. The trier of fact must not consider or discuss anything that is not evidence in a trial. A judge must not consider any personal knowledge or information that she may have about any fact or any person connected with a case that is not evidence in the trial.

. . . .

[T]he decision must always be made solely based upon the evidence in a particular case and nothing outside of that evidence. The Court's ruling also must always be fair and impartial and without bias or prejudice in any manner.

. . . .

[T]his is a general jurisdiction court; and what that means is that . . . . It is actually very common for a single judge to preside over separate trials. That may be separate trials of co-defendants, which in this case there was a co-defendants case pending in [this Court.] This Court will then preside over the divorces of parties in criminal matters, over the CPS cases pertaining to children of defendants in criminal matters and of all other types of matters involving the same people or the same events, and there is absolutely nothing wrong with this.

There is nothing about that that disqualifies a judge. It is simply the way that the framers of the Texas Constitution and the legislature that has created our judicial system and our courts by having general jurisdiction courts and by having multi-county jurisdiction courts—It is simply the way that our system is set up. And as I said, there is nothing whatsoever that says that a trial judge cannot fairly, and by considering only the evidence before it, preside even over a co-defendant's trial; and it is never grounds for a Motion for New Trial that a judge has presided over another case.

Based upon the evidence that has been submitted to the Court today, I find there is no evidence to support the defendant's Motion for a New Trial. The request is denied.

In denying Jaquez's motion for new trial, the trial judge evaluated whether her recusal would have been required if requested by trial counsel, and the trial judge determined that the facts connecting the two cases did not require her recusal. Here, there is no evidence that a disputed evidentiary fact relevant to Jaquez's case was known to the judge from the previous case

12

involving his deceased uncle, and there is no evidence to overcome the presumption that her sentencing decision in Jaquez's case was based on the facts developed during his case.

We cannot conclude on this record that the trial court was required to recuse herself or that she would have granted a motion to recuse had trial counsel filed it. We cannot conclude that Jaquez's trial counsel provided ineffective assistance of counsel for not filing a motion to recuse under these facts. *See Madden v. State*, 911 S.W.2d 236, 241-42 (Tex. App.—Waco 1995, pet. ref'd) (concluding that fact that trial judge "prosecuted a prior case used for enhancement in the present case" did not create basis for trial counsel to file motion to recuse and alternatively noting that "the mere failure to file an appropriate pretrial motion shall not be categorically deemed as ineffective assistance of counsel"); *Diaz v. State*, 380 S.W.3d 309, 313 (Tex. App.—Fort Worth 2012, pet. ref'd) (overruling ineffective-assistance issue when record contained "no comments, remarks, or other indications" of trial judge's bias or prejudice against defendant and issue was based on fact that same trial judge who heard merits in criminal case authorized arrest and search warrants in same case). We overrule Jaquez's second issue.

## CONCLUSION

Having overruled both of Jaquez's issues, we affirm the trial court's judgment of conviction.

_____
Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed: April 10, 2025

Publish

13